ALTIMARI, APPELLANT, v. CAMPBELL, APPELLEE.

(No. C-76229—Decided March 29, 1978.)

*Messrs. Boyd, Wyler & McKew,* for appellant.
*Messrs. Droder & Miller,* for appellee.

PALMER, P. J. This action for damage to the automobile of the plaintiff-appellant grew out of an incident occurring on Galbraith Road near the intersection of a street called Hollybrook, involving an automobile owned and operated by the defendant-appellee at a time when plaintiff's automobile was being operated by his 16 year old son. The trial court granted a so-called motion for directed verdict[1] at the conclusion of plaintiff's case and, subsequently, filed findings of fact and conclusions of law. An appeal was timely filed with four assignments of error presented for review.

The record reveals that the highway where the acci-

---

[1]Since the instant action was tried to the court without a jury, there could have been no directed verdict, or motion therefor. Civ. R. 50(A). The appropriate action is an involuntary dismissal pursuant to Civ. R. 41(B)(2). The consequences may be quite profound, since the test for the former materially differs from the latter. *Jacobs* v. *Bd. of County Commrs.* (1971), 27 Ohio App. 2d 63. See below.

dent occurred, as well as its immediate approaches, was relatively flat and straight, and was marked with only a single centerline. Evidence was disputed as to whether the westbound portion of the highway involved here was sufficiently wide to safely accommodate two lanes of traffic moving simultaneously in a westerly direction. The defendant (called on cross-examination) categorically denied the fact, although the police officer who was called to the scene affirmed that the westbound portion of the roadway was "unmarked two-lane," and so used, and the operator of appellant's car and his passenger testified similarly. The plaintiff's son and his passenger testified that the two automobiles in question were both proceeding westwardly on Galbraith Road, both within the 35 mile per hour speed limit, the defendant's car in the space nearest the centerline and somewhat ahead of the plaintiff's car which was proceeding in the space nearest the curb or berm. As the two cars approached the intersection of Hollybrook, the defendant's car began to edge over into the lane in which plaintiff's car was proceeding. Plaintiff's car was then in a position with the front of his car at approximately the door hinge of defendant's. As defendant continued to move into the area of the roadway being used by plaintiff's car, the operator of the latter applied his brakes and moved further right to avoid defendant's car. As this continued, plaintiff's car was forced off the highway and collided with a utility pole, causing the property damage which was the subject of the suit.

The defendant denied absolutely that he had moved into the curb lane and into the path being travelled by plaintiff's car. He heard no horn or other audible signal, but saw plaintiff's car in his rearview mirror and saw it hit the utility pole. There was additional evidence that at some distance ahead of the area of the collision, the lane of traffic in which defendant's car had been proceeding (i. e., nearest the centerline) became a turn only lane onto Pippin Road, while the curb lane continued as a Galbraith Road through lane.

Based on the foregoing, the court dismissed the plain-

tiff's action, and entered a judgment for the defendant, finding in its conclusions of law that the plaintiff failed to show any acts of negligence on the part of the defendant, and that the operator of plaintiff's automobile was himself negligent in the operation of the vehicle.

The first two assignments of error are without merit, and may be summarily disposed of. The first attacks any imputation of negligence of plaintiff's minor son, the operator of his vehicle, to himself, asserting that while he signed his son's application for an operator's license, and did not deposit (nor did his son) the proof of financial responsibility in form and amounts required by R. C. 4509.-01 to 4509.78, inclusive, he is nevertheless excused from the imputed negligence provided by R. C. 4507.07 because he in fact possessed a policy of automobile liability insurance that covered the incident. in question. The answer to this is simply that, whatever logically may be said for appellant's argument, the General Assembly has clearly and unequivocally provided otherwise by requiring a "deposit" of the proof of financial responsibility in conformity with R. C. Chapter 4509. This was concededly not done in the instant case, and the plaintiff may not therefore avoid a statutorily imposed imputed negligence, if any. *Hill* v. *Harris* (1948), 39 Ohio Op. 267.

The second assignment of error objects to a ruling of the trial court excluding certain proffered testimony of the witness Biddlemeyer. We find no error prejudicial to the appellant therein and accordingly overrule the assignment of error.

The final two assignments of error which attack the dismissal of the action at the conclusion of the plaintiff's case as, essentially, contrary to law and to the manifest weight of the evidence, present substantial and somewhat vexing questions. Part of the problem derives from the assumption by both counsel that the trial court was operating under the rule provided by Civ. R. 50(A)(4) for determining motions for a directed verdict. As a consequence, substantial time and energy has been wasted discussing presumptions in favor of the party against whom

the motion is made, and the "reasonable minds" test of Civ. R. 50. The truth is, of course, that only one rule is provided for such motions in non-jury cases, *viz.*, under the facts and law of the case, *has the plaintiff shown a right to relief?* Civ. R. 41(B)(2). If he has, the motion for dismissal should be overruled; if not, granted. The *test* for applying the rule has been set out by the Court of Appeals for Auglaize County in an opinion by Judge Guernsey, which we approve and adopt:

"This rule [*i. e.*, Civ. R. 41(B)(2)] was derived from the Federal Rule of the same number. It has been determined in the Federal courts that under this rule the court, in a non-jury case, on a motion for involuntary dismissal, is not required to review the evidence in the light most favorable to the plaintiff but is required only to determine whether the plaintiff has made out his case by a preponderance of the evidence. * * * It follows that the judge * * * upon the motion for dismissal being made, was entitled to weigh the evidence. His conclusions may not be set aside unless they are erroneous as a matter of law or aganst the manifest weight of the evidence." *Jacobs* v. *Bd. of County Commrs.* (1971), 27 Ohio App. 2d 63, at 65.

To determine, therefore, whether the trial court erred in dismissing the instant cause, we have examined the record to ascertain whether there existed any basis for concluding that the plaintiff failed to show a right to relief. More particularly—since the trial court expressly concluded that the plaintiff failed to show that there were any acts of negligence on behalf of the defendant and that the plaintiff's operator was negligent in the operation of his motor vehicle—whether these conclusions of the trial court, weighing the evidence before it, were contrary to the manifest weight of the evidence. We conclude that they were.

An examination of the court's findings of fact reveals to us only one factual basis for concluding that plaintiff had failed to demonstrate any act of Defendant's negligence, *viz.*, paragraph 2 therein, which recites:

"* * * Galbraith Road is a highway at the point of the

accident in question divided by a center line into two lanes, one east and one west, and that Hollybrook Drive intersects to form a T intersection."

Obviously, if the highway had but one lane moving westwardly, the defendant could properly have been found not to be negligent in the only respect asserted by plaintiff, *i. e.*, changing his lane from the center lane into the curb lane without first determining that he could do so safely. See R. C. 4511.27, 4511.28.

Our problem with this finding of fact is that it appears to us clearly against the weight of the evidence. Thus, even if one discounts the testimony of the driver of plaintiff's car and that of his passenger that the highway had two full lanes to the right of the centerline, it is difficult to discount the testimony of Officer Heayenrich, as follows:

"Q. And could you describe that roadway for us please? * * *

"A. It goes east and west. There are two lanes east and west. As you are going west on it, it is sort of like an unmarked two-lane highway. You are going down [*i. e.*, westwardly] and you get approximately 100 feet east of Pippin Road and it turns into three lanes. A left-turn lane west and through lane west and one lane east. * * *

"Q. Okay, so if I am correct, you are saying that it is two lanes each direction here getting to three lanes up here, one east and two west?

"A. Yes, sir, unmarked."

On cross-examination, the following colloquy occurred between defendant's counsel and the police officer:

"Q. By the way, Officer, do you know—do you have any idea how wide this is, this street?

"A. I have never measured it.

"Q. Just approximately.

"A. *I figure approximately 52 feet wide.* .. ..

"Q. You are approximating and you are not sure?

"A. No sir, I have never measured center line to curb."

Defendant, on cross-examination, stated as follows:

"Q. This is a two-lane road going in each direction, is that correct?

"A. In my opinion, no. * * *

"Q. Are you familiar with this roadway, sir?

"A. No, not too much.

"No, not too much.

"Q. You live in that area?

"A. I don't use the road very much."

Contrasting the defendant's testimony to that of the officer, it simply strains credulity to reject the testimony of the officer, as well as the two other witnesses, and to accept the defendant's equivocal version of the width of the roadway.[2] But if we find paragraph 2 of the court's findings of fact to be contrary to the manifest weight of the evidence, as we do, we are left with nothing that we can ascertain in the trial court's findings which would provide a fundament for its first conclusion of law, that the plaintiff failed to show any act of negligence on behalf of the defendant. The trial court *could* have found that it credited defendant's testimony that he did not move into the curb lane in front of the plaintiff's car and discredited the opposite testimony of the operator of plaintiff's car and his passenger, thus removing from the case the operative act of negligence chargeable to defendant. But it did not do so, and we are unable to speculate as to evidentiary findings of disputed fact not incorporated into its findings of fact and conclusions of law. We are left, as a result, with a record which requires us to hold that the first of the trial court's conclusions of law is without support in its findings of fact.

This determination might not, however, be dispositive of the appeal if the third of the trial court's conclusions of law, that the plaintiff's operator was contributorily negligent in the operation of his vehicle, may be sustained. As we have previously noted in connection with the disposition of the first assignment of error, any negligence of the minor son of the plaintiff which proximately contributed to the injury must be imputed to the plaintiff pursuant to R. C.

---

[2] It may also be noted that the defendant agreed that 100 yards from the scene of the accident, Galbraith Road proceeding west divided into one lane going to Pippin Road and the other continuing as Galbraith.

4507.07. The existence of any such contributory negligence, if properly determined by the trial court, would, of course, justify the granting of the dismissal whether or not the court was correct in determining the issue of defendant's negligence. Our final examination is therefore addressed to the propriety of this conclusion of law.

Again, our examination of the findings of fact reveals only two findings which would appear to have any bearing on this issue. The first is the paragraph 2 finding set out *supra* which we have found to be contrary to the manifest weight of the evidence. Obviously, if Galbraith Road were one lane west, the provisions of R. C. 4511.28(A)(2) permitting passing on the right "[u]pon a roadway with unobstructed pavement of sufficient width for two or more lines of vehicles moving lawfully in the direction being traveled by the overtaking vehicle" would not be available to plaintiff, and a finding of contributory negligence would be sustainable. As stated above, however, the manifest weight of the evidence opposes this finding.

If then, the section of Galbraith Road in question qualifies for inclusion within R. C. 4511.28(A)(2) to allow passing on the right, what remains factually present in the case to allow a conclusion that plaintiff's operator was contributorily negligent? Only one other finding of fact may be said to bear on this issue. In its findings of fact the trial court found:

"* * * [N]o signal was given by the motor vehicle to the rear operated by plaintiff's son as it was being operated just shortly before it went into the telephone pole."

The defendant argues that R. C. 4511.28(B) and 4511.-27 together required plaintiff's operator to have given an audible signal before attempting to pass on the right, and that his failure to do so constituted negligence. We disagree.

R. C. 4511.28(B), speaking to conditions allowing a vehicle to pass on the right, states:

"The driver of a vehicle or trackless trolley may overtake and pass another vehicle or trackless trolley only under conditions permitting such movement in safety. The

movement shall not be made by driving off the roadway.''

There is no finding of fact, nor was there any evidence, that plaintiff's vehicle was driven off the roadway prior to its being forced off by defendant's movement into the right lane, nor is there any evidence or finding of fact that plaintiff's vehicle proceeded other than under conditions permitting such movement in safety—unless the failure to give an audible signal may be so construed.

As to this, R. C. 4511.27 is cited to us, and provides:

''The following rules govern the overtaking and passing of vehicles or trackless trolleys proceeding in the same direction:

''(A) The operator of a vehicle or trackless trolley overtaking another vehicle or trackless trolley proceeding in the same direction shall, except as provided in division (C) of this section, signal to the *vehicle or trackless trolley to be overtaken, shall pass to the left thereof at a safe distance,* and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle or trackless trolley.

''(B) *Except when overtaking and passing on the right is permitted,* the operator of an overtaken vehicle shall give way to the right in favor of an overtaking vehicle at the latter's audible signal, and he shall not increase the speed of his vehicle until completely passed by the overtaking vehicle.''[B]    (Emphasis added.)

We find no comfort in this section to defendant's position that plaintiff's vehicle should have given an audible signal before passing in an otherwise lawful manner *to the right*. The rule of R. C. 4511.27 is obviously addressed to the usual manner of passing to the left; R. C. 4511.-28 is expressly addressed to the more unusual circumstances allowing passing on the right and contains no audible signal requirement. Since the automatic and ingrained re-

---

[B]Section (C) of this statute exempts, *inter alia,* a "highway with four or more traffic lanes" from the requirement of an audible signal. There is considerable evidence that this was in fact the case, although not as conclusive as the evidence that there were two west bound lanes to the north of the centerline.

sponse of an experienced driver hearing a horn behind him is *to give way to the right* to allow passing to the left, anyone desiring to pass on the right, under conditions otherwise allowing it, could well place both himself and the car ahead in substantial jeopardy by sounding his horn before coming abreast of the car ahead. Had plaintiff's operator sounded his horn before overtaking defendant's vehicle—as we hold he had no fixed and invariable statutory duty to do—he could quite likely have exacerbated his problem.

We conclude, therefore, that where there is (as we have held) sufficient width for two or more lines of vehicles moving in the direction of the overtaking vehicle under R. C. 4511.28(A)(2), and where there is no evidence that the overtaking on the right is being accomplished under conditions not permitting such movement in safety under R. C. 4511.28(B), it is not negligent under R. C. 4511.27 for the overtaking vehicle to fail to give an audible signal before overtaking and passing on the right.

It follows, then, since there is no other evidence nor finding of fact sustaining the trial court's conclusion that plaintiff's operator was negligent, and no fundament (as determined *supra*) for its finding that plaintiff had failed to show any acts of negligence on defendant's part, that the trial court erred in granting a dismissal of the action. Plaintiff's assignments of error three and four are accordingly sustained, the judgment is reversed, and the cause remanded to the trial court for a new trial.

*Judgment reversed and cause remanded.*

KEEFE and BLACK, JJ. concur.