McIntyre et al., Appellants, *v.* Northern Ohio
Properties et al., Appellees.

(No. 39850—Decided June 7, 1979.)

*Mr. Avery S. Friedman* and *Mr. Jeffrey H. Friedman,*
for appellants.
*Mr. John M. Baker,* for appellees.

Jackson, J. Plaintiffs, Lawrence and Marie McIntyre,
the appellants herein, filed this action alleging that defendant
Northern Ohio Properties, Inc. (hereinafter "NOP"), by and
through their agent, defendant Steven Holett, an appellee,
discriminated against Lawrence McIntyre solely because of
his physical handicap, in violation of R. C. 4112.02(H)(1) and
4112.02(H)(4). Plaintiffs sought equitable relief and mone-

tary damages. Upon the motion of the defendants, the trial court ruled that the within matter was to be tried to the court and further dismissed the claim of Marie McIntyre as not cognizable under R. C. Chapter 4112.

The evidence established at trial reveals that plaintiffs were tenants at the Bridlewood Apartments located in North Olmsted, Ohio. Bridlewood is one of several properties managed by defendant Holett, the property manager of NOP. The enforcement of the rules and regulations of the apartments was the responsibility of Mr. Holett.

One of the rules at Bridlewood prohibited residents from wearing "cut-offs" (cut-off jeans) in the swimming pool. Lawrence McIntyre (hereinafter plaintiff) had lost both of his legs in Vietnam and needed to wear "cut-offs" when swimming in order to protect the stumps of his legs from the cement in the swimming pool. Mr. Todaro, the superintendent of Bridlewood, gave instructions to the lifeguards to permit plaintiff to wear "cut-offs" in the pool.

Plaintiff testified that he used the pool while wearing cut-offs without any problem during the summers of 1974 and 1975. Mr. Holett was not aware of either the specific need of the plaintiff for cut-offs, or the exception granted him by the superintendent of Bridlewood Apartments.

The incident in question occurred on July 27, 1976, as a result of plaintiff's inquiring of Mr. Sloan, the assistant superintendent, about a pool regulation which requires that all guests must be signed in by a resident and accompanied at the pool. Plaintiff's father-in-law was visiting and plaintiff decided to accompany him to the pool and go swimming in his cut-offs. Mr. Sloan informed him that swimming in "cut-offs" was prohibited.

Defendant Holett, who was on a routine visit to Bridlewood on July 27, 1976, also informed plaintiff that wearing cut-offs in the pool was not permitted and threatened to call the police if plaintiff insisted. However, upon learning from Mr. Todaro that an exception had been made for plaintiff, Mr. Holett testified he ordered Mr. Todaro to inform plaintiff he could wear cut-offs in the swimming pool.

Plaintiff testified he was neither aware of, nor received any information regarding any rule or regulation prohibiting cut-offs in the swimming pool. However, defendant Holett

testified that this rule was posted on a sign in the swimming pool area and that a letter was delivered to all residents in May 1976 reminding them that cut-offs were not permitted in the swimming pool.

Plaintiff claims that the conduct of Mr. Holett on July 27, 1976, in refusing to allow him to wear cut-offs in the pool constituted discrimination in violation of R. C. 4112.02(H)(1) and (H)(4), solely because of his physical handicap. Plaintiff alleges that he suffered severe emotional distress and humiliation as a result of the incident and that, because defendant Holett threatened to call the police, he has not utilized the pool since that occasion.

Plaintiff further testified that he did not sustain any monetary damage as a result of the incident, and that he was not otherwise prohibited from using the swimming pool.[1]

Defendants' motion for a directed verdict at the close of plaintiffs' case-in-chief was sustained by the trial court.

Plaintiffs filed a timely notice of appeal and assign three errors for review:

"I. The trial court erred in denying the right of trial by jury to the plaintiff under Ohio's Fair Housing for the Handicapped law.

"II. The trial court erred in directing a verdict based upon the facts elicited at trial.

"III. The trial court erred in dismissing plaintiff's wife as a co-plaintiff as having no standing to sue under the statute."

Plaintiffs maintain in their second assignment of error that the trial court erred in sustaining a motion by defendants for a directed verdict.

First, it is clear from the judgment entry in the case at bar that the trial court utilized the standard provided by Civil Rule 50(A)(4) in ruling on defendants' motion for a directed verdict. However, in a non-jury case such as the case at bar, the motion by defendants should properly have been determined pursuant to provisions of Civil Rule 41(B)(2), involuntary dismissals, non-jury actions, which is governed by a different standard. *See Jacobs* v. *Bd. of County Commrs.* (1971),

---

[1] The parties stipulated at the hearing for an injunction that plaintiff was entitled to use the pool.

27 Ohio App. 2d 63, and *Altimari* v. *Campbell* (1978), 56 Ohio App. 2d 253.

Civil Rule 41(B)(2) provides, in pertinent part:

"Dismissal; non-jury action. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.\*\*\*"

The standard for applying Civil Rule 41(B)(2) has been described as follows:

"This rule was derived from the Federal Rule of the same number. It has been determined in the Federal courts that under this rule the court, in a non-jury case, on a motion for involuntary dismissal, *is not required to review the evidence in the light most favorable to the plaintiff but is required only to determine whether the plaintiff has made out his case by a preponderance of the evidence.\*\*\**

"It follows that the judge of the Probate Division of the Common Pleas Court, upon the motion for dismissal being made, was entitled to weigh the evidence. *His conclusions may not be set aside unless they are erroneous as a matter of law or against the manifest weight of the evidence.*" (Emphasis added and citations omitted.) *Jacobs* v. *Bd. of County Commrs., supra,* at 65.

After carefully reviewing the record in the case at bar, we are persuaded that the trial court correctly sustained the defendants' motion albeit applying an incorrect standard, as plaintiffs failed to satisfy their burden of proof.

The complaint is predicated upon alleged violations of R. C. 4112.02(H)(1) and (H)(4). R. C. 4112.02(H)(1) provides that it shall be an unlawful discriminatory practice:

"(H) For any person to:

· "(1) *Refuse to sell, transfer, assign, rent, lease, sublease, finance, or otherwise deny or withhold housing accommodations from any person because of* the race, color, religion, sex, ancestry, *handicap,* or national origin of any prospective owner, occupant, or user of such housing;" (Emphasis added.)

The record in the case at bar is barren of any evidence tending to show that defendants refused to lease "or otherwise deny or withhold housing accommodations" from plaintiffs. The complaint alleges a denial of the use of a swimming pool, which is not a "housing accommodation" as defined in R. C. 4112.01(J).[2] Therefore, Section 4112.02(H)(1) is not applicable under the facts of the case at bar.

R. C. 4112.02(H)(4) provides that it is an unlawful discriminatory practice for any person to:

*"Discriminate against any person* in the terms or conditions of selling, transferring, assigning, renting, leasing, or subleasing any housing or *in furnishing facilities, services, or privileges in connection with the ownership, occupancy, or use of any housing because of* the race, color, religion, sex, ancestry, *handicap,* or national origin of any present or prospective owner, occupant, or user of such housing;" (Emphasis added.)

When determining whether there has been a violation of R. C. 4112.02(H)(4), the test as applied to the facts in proceedings before this court is whether plaintiff was denied the use of the swimming pool because of his physical handicap.

At best, the record establishes only that plaintiff was denied the use of the swimming pool because "cut-offs" were not permitted to be worn *by any residents* in the swimming pool. Even if plaintiff were to contend that this regulation effectively precluded him from using the swimming pool because of his need to protect his stumps, we are not persuaded that it is sufficient to constitute a discriminatory act under the facts of this case. The evidence establishes that the

---

[2] R. C. 4112.01(J) reads:

" 'Housing accommodations' includes any building or structure or portion thereof which is used or occupied or is intended, arranged, or designed to be used or occupied as the home residence or sleeping place of one or more individuals, groups, or families whether or not living independently of each other; and any vacant land offered for sale or lease.

"It also includes any housing accommodations held or offered for sale or rent by a real estate broker, salesman, or agent, or by any other person pursuant to authorization of the owner, by the owner, or by such person's legal representative."

While R. C. 4112.01 and 4112.02 are remedial statutes and are therefore to be construed liberally in order to effectuate their legislative purpose, even the most liberal interpretation of "housing accommodations" cannot be said to include swimming pools within its purview. *Cf. Ohio Civil Rights Comm.* v. *Lysyj* (1974), 38 Ohio St. 2d 217, 220.

purpose of the rule prohibiting the wearing of "cut-offs" in the pool was to prevent mechanical failure of the pool's filtration system which could be caused by bits of clothing that would detach from cut-offs. The evidence indicates that this rule was applicable to all residents and not specifically directed at plaintiff.

Moreover, R. C. 4112.02(M) supports this conclusion:

"Nothing in division (H) of this section shall be construed to require any person selling or renting property to modify such property in any way or to exercise a higher degree of care for a person having a handicap, *nor shall it be construed to relieve any handicapped person of any obligation generally imposed on all persons regardless of handicap in a written lease, rental agreement, or contract of purchase or sale,* or to forbid distinctions based on the inability to fulfill the terms and conditions, including financial obligations, of the lease, agreement, or contract." (Emphasis added.)

Therefore, having failed to produce any evidence of a discriminatory act under provisions of the statute by defendants, we find that the judgment of the trial court was not erroneous as a matter of law or against the weight of the evidence. Civ. R. 41(B)(2); *Jacobs, supra.*

The second error assigned is overruled.

Plaintiffs maintain in their first and third assignments of error, respectively, that the trial court erred in denying their right to a jury trial and in dismissing the claim of Mrs. McIntyre as a co-plaintiff in this matter.

As to the latter, whether Marie McIntyre is an "aggrieved person" within the meaning of R. C. 4112.051(A)[3] and thereby has standing to sue under the Ohio Civil Rights Act is a moot issue. This court having determined that a *prima facie* case of discrimination in violation of R. C. 4112.02(H)(1) and (H)(4) was not established at trial by the plaintiff, the dismissal of Marie McIntyre as a co-plaintiff would not justify a reversal of the judgment and therefore need not be addressed further.

[3] R. C. 4112.051(A) provides:

"*The rights granted by division (H) of section 4112.02 of the Revised Code may be enforced by aggrieved private persons by filing civil actions in a court of common pleas.* No person shall be compelled to be a witness against himself. A civil action shall be commenced within one hundred eighty days after the alleged discriminatory housing practice occurred." (Emphasis added.)

Finally, plaintiffs maintain that the trial court erred when it denied their demand for a jury trial. They rely upon *Curtis* v. *Loether* (1974), 415 U.S. 189, which held, at page 192:

"***[W]e think it is clear that the Seventh Amendment entitles either party to demand a jury trial in an action for damages in the federal courts under §812."

However, the holding in that case was expressly limited to private civil actions brought in federal courts under Section 812 of the Civil Rights Act of 1968. The Supreme Court explained, in footnote 6 of the opinion, at page 192:

"***[T]he Seventh Amendment issue in this case is in a very real sense the narrower ground of decision. Section 812 (a) expressly authorizes actions to be brought 'in appropriate State or local courts of general jurisdiction,' as well as in the federal courts. *The Court has not held that the right to jury trial in civil cases is an element of due process applicable to state courts through the Fourteenth Amendment. Since we rest our decision on Seventh Amendment rather than statutory grounds, we express no view as to whether jury trials must be afforded in §812 actions in the state courts.*" (Emphasis added.)

Thus, plaintiffs reliance on *Curtis* v. *Loether, supra,* is clearly misplaced. Accordingly, Ohio law must govern whether plaintiffs have a right to a jury trial under the Ohio Civil Rights Act.

It is well established law in Ohio that the Ohio Constitution preserves the right to a jury trial only in those civil actions where the right existed prior to the adoption of the Constitution. *Belding* v. *State, ex rel. Heifner* (1929), 121 Ohio St. 393. The Franklin County Court of Appeals recognized that:

"Where a statute setting forth a new civil right is adopted, the General Assembly may grant a right to jury trial, but need not do so. No such right is contained in this statute [R. C. 4511.191] and no such right exists. *Bright* v. *Curry* (1973), 35 Ohio Misc. 51." *Raine* v. *Curry* (1975), 45 Ohio App. 2d 155, 162.

In the case at bar, provisions of the Ohio Civil Rights Act (R. C. 4112.01 *et seq.*) do not provide for trial by jury in actions brought thereunder. Rather, R. C. 4112.051(E) provides:

"The court may grant such relief as it deems appropriate, including a permanent or temporary injunction, temporary restraining order, or other order, and may award to the plaintiff actual damages, together with the court costs."

Consequently, as the right to a jury trial is not contained in the statute, the trial court did not err in denying plaintiffs' demand for a jury trial. *See* Civil Rule 39(A). Plaintiffs' first and third assigned errors are overruled.

Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*

KRENZLER, P. J., and KRUPANSKY, J., concur.