OPINION
Plaintiffs, Angela L. Daugherty and her mother, Winna Daugherty, appeal from a judgment of the Franklin County Municipal Court in favor of defendant, Michael J. Dune, and advance the following five assignments of error:
 I. The trial court erred when it held that plaintiff-appellant Angela L. Daugherty's claims against defendant-appellee for reimbursement for defendant's share of the mortgage loan payment she had made on behalf of the parties' residence were barred by section 2305.29, Revised Code, the "Heart Balm" statute.
 II. The trial court's holding that plaintiff-appellant Angela L. Daugherty did not prove an express contract between defendant-appellee and her concerning their mutual responsibility for making mortgage loan payments is against the manifest weight of the evidence.
 III. The trial court erred by failing to hold that defendant-appellee must contribute to plaintiff-appellant Angela L. Daugherty one-half of the mortgage loan payments she made between August 1996 and November 1997.
 IV. The trial court erred by holding that plaintiff-appellant Winna Daugherty's claim for reimbursement from defendant-appellee Michael Dune for one-half of the mortgage loan payments she made was barred because of section 2305.29, Revised Code, the "heart balm" statute, and further erred because the trial court failed to find a legal obligation from Michael to reimburse Winna.
 V. The trial court erred by failing to permit plaintiffs-appellants to file their second amended complaint; by failing to vacate its judgment entries filed November 5, 1998, November 10, 1998, and November 13, 1998, respectively; and by failing to grant plaintiffs-appellants a new trial.
Angela Daugherty and Michael Dune began dating in 1991. In 1993, the two began cohabiting and, in 1995, became engaged to marry. A wedding was scheduled for October 1996. In April 1996, the couple decided to purchase a house together. According to Michael, he had not planned to purchase a house so soon and was not financially ready to do so. Angela was aware of Michael's poor credit history, outstanding debt obligations and reluctance to incur such a large financial obligation. Nonetheless, Michael agreed to go forward with the purchase because Angela wanted to buy a house.
Angela provided the down payment out of money she received in a severance package from her former employer. On April 12, 1996, Angela and Michael executed a joint and several note and a mortgage to Unlimited Mortgage Services, Inc. in the amount of $121,700. The property was titled in both names. According to Angela, she told Michael that she could not afford to make the entire $1,075.34 monthly mortgage payment on her own, so she expected him to contribute one-half of the monthly payment; Michael understood this obligation, was "very agreeable" to it and told her it "wouldn't be a problem." (Tr. 16.) According to Michael, he told Angela only that he would "try to do his fair share" in paying the mortgage payment. (Tr. 65.) It is undisputed that the parties did not execute a written agreement regarding their respective obligations as to the monthly mortgage payment.
In August 1996, Michael broke the engagement and moved out of the house. For the next few months, he occasionally spent the weekend at the house with Angela and discussed reconciliation; however, he did not reside in the house on a permanent basis after August 1996.
After he moved out, Angela told Michael that even though he was no longer living in the house, she needed his help making the monthly mortgage payment because she could not afford to make the entire payment herself. She asked him to pay "whatever [he could] give [her]." (Tr. 21). He told her that although he was going to start paying rent somewhere else, he would "try to do what [he] could." (Tr. 66.)
So that she could refinance the house in her own name, Angela initiated proceedings to have Michael's name removed from the note, mortgage and deed and to have her name removed from an automobile loan she had co-signed for Michael. According to Angela, Michael repeatedly told her that he wanted to attempt a reconciliation and asked her to postpone the refinancing. Ultimately, however, there was no reconciliation and, in November 1997, Michael conveyed his interest in the property to Angela by quit claim deed. After the conveyance of Michael's interest in the real estate, Angela refinanced the house in her own name, thereby discharging Michael's obligation on the promissory note.
Between August 1996 and October 1997, Angela made thirteen mortgage payments totaling $13,977.34. During that same time period, Angela's mother, plaintiff Winna Daugherty, made two mortgage payments totaling $2,203.43 because Angela could not afford to make them. According to Michael, at the time he signed the quit-claim deed in November 1997, no mention was made of him reimbursing either Angela or Winna for any portion of the mortgage payments made after he moved out of the house in August 1996.
In a complaint filed April 28, 1998, Angela alleged in the second paragraph, as follows:
 In contemplation of their wedding, the parties purchased a residence together, incurring a mortgage loan and other expenses.
By her complaint, Angela sought recovery of one-half of the mortgage payments made between August 1996 and October 1997.
On August 14, 1998, Angela filed a motion seeking leave to amend her complaint to add her mother, Winna, as a party plaintiff. The allegations asserted in the amended complaint regarding Angela's cause of action against Michael were identical to those raised in the original complaint. The amended complaint, however, contained a second cause of action seeking recovery from Michael for expenditures Winna made for "* * * two mortgage payments on the residence. * * *" The trial court granted Angela's motion on September 23, 1998.[1]
The matter was tried to the court on November 3, 1998. Following the plaintiffs' case-in-chief, Michael moved the court for a "directed verdict" dismissing plaintiffs' claims, arguing that because the house was purchased (and the mortgage payments were incurred) in contemplation of the marriage, plaintiffs' claims were barred under R.C. 2305.29.[2] In response, plaintiffs argued that: (1) R.C. 2305.29 was inapplicable because Angela's claim was brought against Michael upon his breach of the agreement he had with Angela to pay one-half of the mortgage payments, rather than upon his breach of the promise to marry her; and (2) whether there was an express agreement or not, Angela was entitled to recovery of one-half of the mortgage payments based upon the equitable doctrine of contribution. Michael responded that plaintiffs' breach of contract and contribution theories were inapplicable because neither had been pled in the complaint.
The trial court granted Michael's motion as to Winna's cause of action, finding that there was no contract or other legal obligation between Michael and Winna requiring Michael to reimburse Winna for the expenditures she made. Following the close of all the evidence, the court dismissed Angela's claim. Citing the allegations contained in the complaint, the court determined that Angela's cause of action was brought upon a theory of Michael's breach of his promise to marry Angela, and was not "a case of contribution or anything else." (Tr. 85.) Accordingly, the court held that R.C. 2305.29 barred recovery. The trial court's decision was formalized by judgment entry dated November 5, 1998.
On November 5, 1998, plaintiffs filed a motion pursuant to Civ.R. 52, requesting that the trial court state in writing its findings of fact and conclusions of law. By entry dated November 10, 1998, the court issued its findings and conclusions. Again citing the allegations in the complaint, the court held that "it is clear that plaintiff's sole cause of action is a claim for damages sustained as a result of the alleged `wrongful conduct' ie, a breach of the promise to marry. Plaintiff never moved to amend her complaint or state any other cause of action." Accordingly, the court held that recovery was barred by R.C.2305.29.
On November 9, 1998, plaintiffs filed a motion, pursuant to Civ.R. 15(B), seeking leave to file a second amended complaint. In the memorandum in support of their motion, plaintiffs argued that, without objection and by the implied consent of Michael, plaintiffs had actually tried their case based upon a theory of breach of express contract and/or contribution rather than upon a theory of breach of promise to marry.
Plaintiffs attached to the motion their second amended complaint, which alleged, in count one, that Angela and Michael "entered into an express contract whereby they agreed to share between themselves all of the expenses of the purchase [of the residence], including * * * mortgage loan * * * expenses [and] [p]ursuant thereto, the parties, in fact, purchased the residence on April 12, 1996, signing, among other documents, a promissory note whereby plaintiff and defendant became jointly and severally liable to the mortgage lender * * * [and] [u]ntil plaintiff refinanced the loan, defendant remained jointly and severally liable with plaintiff on the note to the mortgage lender." Count one also alleged that Michael made none of the loan payments between August 1996 and October 1997. The complaint demanded reimbursement of one-half of the money expended on the mortgage payments.
The complaint alleged in count two that Winna had agreed with Angela to loan the couple the necessary funds, interest-free, to make two mortgage payments; the complaint demanded reimbursement of one-half of the money loaned toward making those two mortgage payments.
On November 13, 1998, the trial court denied plaintiffs' request to file a second amended complaint, for the reason that "[p]laintiff's claim as previously stated by the Court was based solely upon a claim of breach of promise to marry."
On November 17, 1998, plaintiffs filed a motion requesting the court to vacate its November 5, 10, and 13, 1998 entries; to allow the filing of the second amended complaint; and to grant plaintiffs a new trial, pursuant to Civ.R. 59(A), on the issues raised in the second amended complaint. The motion was overruled by entry dated November 20, 1998. That entry stated, in relevant part, that plaintiffs' motion failed to set forth any of the Civ.R. 59 grounds for granting a new trial; that plaintiffs' sole theory of recovery was founded upon a breach of promise to marry; and that plaintiffs did not present sufficient evidence of a contractual arrangement between the parties.
On December 9, 1998, plaintiffs filed a notice of appeal from the trial court's entries of November 5, 10, 13 and 20, 1998.
As an initial matter, we note that this matter was tried to the bench, and not to a jury. Thus, a Civ.R. 50 motion for a directed verdict is improper, as a motion for directed verdict does not lie in a nonjury case. Altimari v. Campbell (1978),56 Ohio App.2d 253, 256; Johnson v. Tansky Sawmill Toyota, Inc.
(1994), 95 Ohio App.3d 164, 167. In such a case, the motion for directed verdict is deemed to be a motion to dismiss pursuant to Civ.R. 41(B)(2). Altimari, supra. Thus, the trial court is not required to construe the evidence in favor of the nonmoving party, as it would in ruling on a motion for a directed verdict. Rather, the court may weigh the evidence and render judgment. Levine v.Beckman (1988), 48 Ohio App.3d 24, 27.
Civ.R. 41(B)(2) authorizes a trial court, in its discretion, to dismiss the action if the plaintiff has failed to prove its case by a preponderance of the evidence or the otherwise applicable burden of proof. Id. A dismissal pursuant to Civ.R. 41(B)(2) will be set aside by an appellate court only when it is erroneous as a matter of law or is contrary to the manifest weight of the evidence. Bank One, Dayton, N.A. v. Doughman (1988),59 Ohio App.3d 60, 63. This court's standard of review on manifest weight of the evidence issues is whether there is some competent, credible evidence in support of the trial court's decision. C.E.Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, syllabus. Matters regarding the credibility of witnesses are left to the sound discretion of the trial court. Seasons Coal Co. v.
Cleveland (1984), 10 Ohio St.3d 77, 80.
Plaintiffs have not assigned as error whether the trial court applied the correct standard in sustaining Michael's motion. Inasmuch as the trial court, in granting the motion, referred to it as a "motion to dismiss," for purposes of this appeal, we will treat the court's dismissal of plaintiffs' complaint as one pursuant to Civ.R. 41(B)(2).
By the first assignment of error, Angela contends that the trial court erred in finding that her claim against Michael for one-half of the mortgage payments she made between August 1996 and October 1997 was barred by R.C. 2305.29.
As noted previously, R.C. 2305.29 provides, in pertinent part, that "[n]o person shall be liable in civil damages for any breach of a promise to marry * * *." Angela's complaint asserts that she and Michael purchased the house and, thus, incurred the mortgage loan, "in contemplation of the wedding." In addition, both Angela and Michael testified that the house was purchased in contemplation of their impending marriage. Despite assertions made in her pleading and the testimony at trial, Angela argues that she is entitled to one-half of the mortgage payments she made after Michael broke the engagement and moved out of the house. In support of this proposition, Angela relies on this court's decision in Wilson v. Dabo (1983), 10 Ohio App.3d 169.
In Wilson, this court held that R.C. 2305.29 bars actions for damages from "direct consequences" of a defendant's breach of promise to marry, such as mental anguish, embarrassment, humiliation and forbearance to accept other potential offers of marriage. However, the court further held that the statute does not bar a party from recovering property transferred in reliance upon a promise to marry, when the party to whom the transfer was made would be unjustly enriched if permitted to retain the transferred property after terminating the agreement to marry.
Angela's reliance on Wilson is misplaced. The court's holding in Wilson is clearly based upon the equitable theory of unjust enrichment. In the instant case, Michael has not been unjustly enriched by Angela's payment of the mortgage on the house from August 1996 to October 1997. Michael moved out of the house in August 1996 and never again resided there on a permanent basis. Angela received the full benefit of the payments she made by residing in the house. Under the circumstances, it would be inequitable for Michael to be required to pay one-half of the mortgage payment for the time he did not reside in the house. Accordingly, the first assignment of error is overruled.
By the second assignment of error, Angela argues that the trial court erred in finding that there was insufficient evidence to establish that Angela and Michael had expressly agreed to share equally the monthly mortgage payment. Upon review of the record, we find that the evidence on this issue was disputed. As noted previously, the couple did not execute a written agreement regarding their respective obligations as to the monthly mortgage payment. Angela testified that prior to purchasing the house, she told Michael that she could not afford to make the entire monthly payment on her own, that she expected him to contribute one-half of the payment, and that Michael understood this obligation and agreed to it. In contrast, Michael testified that Angela was aware of his poor credit history, outstanding debts and reluctance to purchase a house and that he told her only that he would try to pay his fair share. In addition, after Michael moved out, Angela requested only that Michael help her out with the house payment by giving her what he could afford. Michael testified that he told Angela only that he would try to do what he could toward contributing to the house payment.
As previously noted, a court of appeals is guided by a presumption that the findings of the trier of fact, who is best able to view witnesses and observe their demeanor, are indeed correct. Seasons Coal, supra. In the instant case, it is clear that the trial court believed Michael and disbelieved Angela on the breach of contract issue. As the trial court's finding is supported by competent, credible evidence, we will not disturb it. Accordingly, the second assignment of error is overruled.
By the third assignment of error, Angela contends that even if the trial court correctly held that there was insufficient evidence of an express contract between the parties regarding the monthly mortgage payment, the trial court erred in failing to find that Michael was obligated to pay one-half of the monthly mortgage payment under the equitable doctrine of contribution.
Contribution is an equitable principle that arises between joint obligors where one has paid more than his or her fair share of the obligation. Pietro v. Leonetti (1972), 30 Ohio St.2d 178; Marc Glassman, Inc. v. Bag-a-Sweet Candy Co. (Dec. 14, 1995), Cuyahoga App. No. 68574, unreported. The right of contribution is limited to the amount paid that exceeds the obligor's proportionate share of the liability. Glassman, supra.
In this case, Angela presented evidence that Michael co-signed and was jointly liable for payment on the mortgage note. Michael admitted that he made no payments on the note between the time he moved out of the house in August 1996 and November 1997, when he quit claimed the deed to Angela. Angela submitted documents and testimony establishing that she paid the entire monthly payment each month from August 1996 to November 1997. However, as noted in our discussion of the first assignment of error, Angela alone benefited from her payment of the mortgage on the house. Furthermore, as noted in our discussion of the second assignment of error, the evidence offered at trial does not support Angela's claim that Michael expressly agreed to make one-half of the mortgage payments after he moved out of the house. Under the facts and circumstances of the instant case, we find that, while the doctrine of contribution is applicable, the plaintiffs cannot advance this theory in view of being denied amendment of the pleadings. Thus, the third assignment of error is overruled.
By the fourth assignment of error, Winna argues that the trial court erred in finding that there was no contract or other legal obligation between Michael and Winna requiring Michael to reimburse Winna for the mortgage payments. We find no error by the trial court.
Angela testified that after Michael moved out of the house, she discovered that the house was in need of some major repairs. Because she could not afford to make the necessary repairs, Winna offered to loan her the money. Angela, Winna and Michael all testified that Winna and Michael never discussed the loan arrangement; however, Angela and Winna both testified that Angela told Michael about the loan and that he approved it. Angela testified that in addition to the money loaned for the house repairs, Winna made two of Angela's mortgage payments for her. Although there is testimony that Michael agreed to the loan from Winna in order to have the house repaired, no testimony suggests that Michael was even aware that Winna had given Angela money to cover the mortgage payments or that he approved such an arrangement. Accordingly, the fourth assignment of error is overruled.
By the fifth assignment of error, plaintiffs assert that the trial court erred in denying their post-judgment motion to amend the pleadings to conform to the evidence regarding the breach of contract and contribution theories of recovery.
Civ.R. 15(B) concerns the amendment of pleadings to conform to the evidence and states in pertinent part as follows:
 When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. * * *
Civ.R. 15(B) expresses a liberal policy toward the allowance of amendments. Hall v. Bunn (1984), 11 Ohio St.3d 118,121. In State ex rel. Evans v. Bainbridge Twp. Trustees (1983),5 Ohio St.3d 41, the Ohio Supreme Court held in the syllabus, as follows:
 1. An implied amendment of the pleadings under Civ.R. 15(B) will not be permitted where it results in substantial prejudice to a party. Various factors to be considered in determining whether the parties impliedly consented to litigate an issue include: whether they recognized that an unpleaded issue entered the case; whether the opposing party had a fair opportunity to address the tendered issue or would offer additional evidence if the case were to be tried on a different theory; and, whether the witnesses were subjected to extensive cross-examination on the issue.
 2. Under Civ.R. 15(B), implied consent is not established merely because evidence bearing directly on an unpleaded issue was introduced without objection; it must appear that the parties understood the evidence was aimed at the unpleaded issue.
 3. Whether an unpleaded issue is tried by implied consent is to be determined by the trial court, whose finding will not be disturbed, absent showing of an abuse of discretion.
An abuse of discretion connotes more than just an error of law. It exists where the court's attitude, evidenced by its decision, was unreasonable, arbitrary, or unconscionable. Worthington v. Worthington (1986), 21 Ohio St.3d 73.
As is evident from this court's recitation of the procedural history and evidentiary facts of this case, as well as from our discussion regarding the assignments of error raised, issues regarding the existence of a contractual arrangement between the parties and/or the doctrine of contribution were raised and argued throughout the trial.
Plaintiffs suffered no prejudice, however, from the trial court's failure to amend the pleadings to add either of these causes of action. As noted in our discussion of assignments of error two, three and four, insufficient evidence was presented to establish a contractual arrangement between either Angela or Winna and Michael, or to support Angela's contribution theory. Thus, we find that the trial court did not abuse its discretion in denying plaintiffs' motion to amend the pleadings. Accordingly, the fifth assignment of error is overruled.
For the foregoing reasons, all five of plaintiffs' assignments of error are overruled, and the judgment of the Franklin County Municipal Court is affirmed.
Judgment affirmed.
LAZARUS, P.J., and DESHLER, J., concur.
[1] Both the original complaint and the amended complaint also sought recovery from Michael for one-half of expenses incurred by Angela and Winna in preparation for the wedding (bridal party dresses, reception hall rental, invitations, photographer, etc.). The amended complaint also sought reimbursement for one-half of the money expended by Winna to pay for repairs to the couple's residence. The trial court found that plaintiffs were not entitled to recovery for any of the wedding related expenses or for Winna's expenditures regarding house repairs. In their brief before this court, plaintiffs state that they "have abandoned all claims they have or may have against Michael except claims for payments they respectively made between August 1996 and November 1997 on the mortgage loan." Accordingly, this court will limit both its recitation of the facts and legal analysis to plaintiffs' claims for one-half of the mortgage payments.
[2] R.C. 2305.29, commonly referred to as the "heart balm" statute, provides that: "[n]o person shall be liable in civil damages for any breach of a promise to marry, alienation of affections, or criminal conversation, and no person shall be liable in civil damages for seduction of any person eighteen years of age or older who is not incompetent, as defined in section2111.01 of the Revised Code."