OPINION
Plaintiff-appellant, Daniel F. Rohr, appeals from a judgment of the Franklin County Municipal Court granting the motion to dismiss of defendants-appellees, Richard and Charlotte Schafer ("defendants"), at the close of plaintiff's case-in-chief in a trial to the court.
Plaintiff purchased a Buick LeSabre in September 1996. His son, Brendan Rohr ("Brendan") paid $1,500 of the purchase price. The car was titled in plaintiff's name, and Brendan was not to allow others to drive the car. On February 7, 1997, Brendan was at a friend's house with approximately fifteen to twenty others. Brendan gave Andrew Vanatta ("Vanatta") and Matt Oser ("Oser") permission to drive the car around the block. Brian Schafer ("Brian") joined them at the car and left with them. Brian eventually drove the car and wrecked it.
Plaintiff filed a complaint against Brian, by and through his father, seeking compensation for the damage to the car, and against defendants, alleging they were responsible under R.C. 3109.09 for the damage Brian caused. Defendants responded with a counterclaim and third party complaint against plaintiff and/or Brendan, for negligent entrustment. The matter was heard in a bench trial on May 3, 1999. Following plaintiff's case-in-chief, the court granted defendants' motion to dismiss. The matter proceeded against Brian and on defendants' counterclaim. The court ultimately granted plaintiff's motion to dismiss the counterclaim and third-party complaint filed by defendants, entered judgment in favor of plaintiff against Brian, and awarded plaintiff $2,489 in damages. Plaintiff appeals, assigning the following errors:
 I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING DEFENDANTS' MOTION FOR DIRECTED VERDICT AT THE CLOSE OF PLAINTIFF'S CASE IN CHIEF ON HIS CLAIM FOR DAMAGES AGAINST THE MINOR'S PARENTS.
 II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN ARRIVING AT THE DAMAGES TO WHICH PLAINTIFF WAS ENTITLED.
 III. THE TRIAL COURT ERRED IN AWARDING INTEREST FROM THE DATE OF THE JUDGMENT.
Plaintiff's first assignment of error asserts the trial court erred in granting a directed verdict to defendants on plaintiff's attempt to hold them responsible for Brian's negligence. Although plaintiff refers to it as a motion for directed verdict, the trial court properly deemed it a motion to dismiss, since the matter was tried to the court, not to a jury. A Civ.R. 50 motion for a directed verdict would have been improper, as a motion for directed verdict does not lie in a bench trial. Daugherty v. Dune (Dec. 30, 1999), Franklin App. No. 98AP-1580, unreported, citing Altimari v. Campbell (1978), 56 Ohio App.2d 253, 256.
Unlike a motion for directed verdict, a motion to dismiss pursuant to Civ.R. 41(B)(2) allows the trial court to weigh the evidence and render judgment. Id., citing Levine v. Beckman (1988), 48 Ohio App.3d 24, 27. "Civ.R. 41(B)(2) authorizes a trial court, in its discretion, to dismiss the action if the plaintiff has failed to prove its case by a preponderance of the evidence or the otherwise applicable burden of proof. A dismissal pursuant to Civ.R. 41(B)(2) will be set aside by an appellate court only when it is erroneous as a matter of law or is contrary to the manifest weight of the evidence. This court's standard of review on manifest weight of the evidence issues is whether there is some competent, credible evidence in support of the trial court's decision. Matters regarding the credibility of witnesses are left to the sound discretion of the trial court." Daugherty, supra. (Citations omitted.) See, also, Schmidt v. Univ. of Cincinnati Med. Ctr. (1997),117 Ohio App.3d 427.
Pursuant to R.C. 3109.09(B), parents can be held liable for actions of a minor if the minor "willfully damages property belonging to the owner or commits acts cognizable as a `theft offense,' as defined in section2913.01 of the Revised Code. * * *" R.C. 2913.01 recognizes a violation of R.C. 2913.03 as a "theft offense." R.C. 2913.03, in relevant part, provides:
 (A) No person shall knowingly use or operate an aircraft, motor vehicle, motorcycle, motorboat, or other motor-propelled vehicle without the consent of the owner or person authorized to give consent.
"R.C. 2913.03 prohibits the use or operation of a motor vehicle without, beyond, or after revocation of the owner's consent." State v. Rose (1992), 63 Ohio St.3d 585, 589.
In dismissing plaintiff's claims against defendants, the trial court made the following findings in support of the motion: "Brian Schafer used the vehicle in question without the consent of either Mr. Rohr or Brendan Rohr, at least initially. But he did obtain permission to drive from a person to whom Brendan Rohr entrusted the vehicle." (Tr. Vol. V, 67.)
Plaintiff contends the evidence before the trial court demonstrates the manner by which Brian came into possession of the vehicle is "cognizable as a theft offense." Specifically, plaintiff points to evidence that (1) Vanatta did not give Brian permission to drive the vehicle, (2) Vanatta did not have authority to give Brian permission to drive the vehicle, (3) Brian knew Brendan would not permit him to drive the vehicle, and (4) Brian deceived Vanatta into permitting him to drive the vehicle.
According to Brendan, he was at Chris Haverick's house on February 7, 1997, watching a movie with approximately fifteen to twenty others. His friend Oser approached and asked Brendan if he could drive Brendan's car. Brendan refused. Oser went away for a few seconds and returned with Vanatta. The three were talking when Oser said, "[W]hat about if me and V [Vanatta] drive, me and V?" (Dep. 14.) In response, Brendan said, "Yes, if it's just you and V." (Id.) Brendan testified he put further limitations on them: "I said they could go around the block, only go around the block, and they had to be back in 10 minutes and they each got five minutes to drive. And they were the only ones using my car to my knowledge." (Id. at 15.) According to Brendan, he was unaware Brian was in the car until he was informed of the incident.
Vanatta substantially corroborated Brendan's testimony. Vanatta testified Brendan gave him and Oser permission to drive the car. They ran outside to get into the car and were followed by Brian and two others who joined them. Oser drove first for approximately five minutes; Vanatta drove next. According to Vanatta, Brian continuously badgered him to allow Brian to drive: "[a]nd while I'm driving, Brian keeps bugging me, let me drive, let me drive. Brendan said I could drive, you know, and — and got to a very annoying point, let me drive, let me drive, let me drive, Brian [sic] said I could. Roe [Brendan Rohr] gave me permission. So I pull over, and Brian got in the driver's seat and started driving." (Tr. 53-54.) Vanatta testified Brian was going fast and not driving very well. Oser told him to slow down, but Brian did not slow down enough to make the turn. As a result, Brian drove the car up a curb, through a fence, and into a tree.
Brian testified he observed Brendan give Oser and Vanatta the keys to Brendan's car; when Oser and Vanatta left, Brian and two other boys followed them to the car. Brian denied Vanatta declined to give him permission to drive the vehicle. Moreover, Brian maintained that although he did not have express permission from Brendan, he believed Brendan would have given him permission to drive the car because Brian had driven it in the past.
The trial court found Vanatta gave Brian permission to drive the car, and that conclusion is supported by the record if the trial court believed Brian, as it was within its discretion to do. Plaintiff, however, contends Vanatta had no authority to permit Brian to drive the car. While Brian did not have Brendan's express consent to drive the car, defendants contend Vanatta had implied authority to allow Brian to drive the car by virtue of Brendan's entrusting the vehicle to him. Because R.C. 2913.03 provides that a "reasonable belief" on the part of the actor is an affirmative defense to unauthorized use, the issue resolves to whether the evidence supports the conclusion underlying the trial court's ruling: Brian had a "reasonable belief" he was authorized to drive the vehicle.
Specifically, R.C. 2913.03 provides an affirmative defense to unauthorized use of a vehicle if:
 (1) At the time of the alleged offense, the actor, though mistaken, reasonably believed that the actor was authorized to use or operate the property.
 (2) At the time of the alleged offense, the actor reasonably believed that the owner or person empowered to give consent would authorize the actor to use or operate the property.
Brendan entrusted the vehicle to Oser and Vanatta to go joyriding. Brian was aware that Vanatta had authority to drive the car. According to Brian, Vanatta gave him permission to drive the vehicle. Thus Brian could reasonably believe he was authorized to drive the vehicle.
Further, Brian contends he had a reasonable belief that Brendan would have allowed him to drive the car since he had driven the car in the past with Brendan's permission. Proof of past permission may be a valid basis for a reasonable belief. See Patterson v. Betarie (Mar. 29, 1996), Lake App. No. 95-L-132, unreported; Davis v. Commercial Union Ins. (Aug. 27, 1998), Cuyahoga App. No. 73286, unreported. Moreover, because the evidence was contradictory with respect to Brendan's ever telling Brian he could never again drive the car, the court could conclude Brian had never been so instructed. Thus the evidence supports the trial court's conclusion that Brian drove the car with permission, or at the least, with a reasonable belief that he had permission.
Plaintiff nonetheless asserts Brian told Vanatta that Brendan gave him permission to drive and thus deceived Vanatta into allowing him to drive. The trial court properly could find to the contrary since Vanatta acknowledged he was aware that Brian did not have permission from Brendan. Vanatta testified that although Brian told Vanatta that Brian had permission, Vanatta did not believe Brian. Rather, Vanatta allowed Brian to drive because Brian was so annoying.
Given all of the foregoing, plaintiff did not meet his burden under R.C. 2913.03. Accordingly, plaintiff's first assignment of error is overruled.
Plaintiff's second assignment of error asserts the trial court erred in using the purchase price of the vehicle in assessing damages.
The general rule is that the owner of a damaged motor vehicle may recover the difference between its market value immediately before and immediately after the collision. Falter v. Toledo (1959), 169 Ohio St. 238, paragraph one of the syllabus. "An alternative method of measuring damages is the reasonable cost of repairing the motor vehicle, provided such recovery does not exceed the difference between the fair market value of the motor vehicle immediately before and immediately after the collision." Walls v. Wildermuth (Nov. 19, 1998), Franklin App. No. 98AP-400, unreported.
As to the value of the vehicle prior to the accident, plaintiff presented an expert witness, Larry Pendleton. Pendleton opined the value of the vehicle before the collision was $4,000, and premised his opinion on the vehicle being in average condition. The trial court declined to rely on Pendleton's valuation of the vehicle, finding neither plaintiff nor Pendleton provided convincing evidence the car was in average condition before the accident. The trial court noted Pendleton had not observed the car prior to the accident but only had observed photographs of the car, and thus was unable to confirm the vehicle's condition. Indeed, Pendleton himself testified he neither observed the vehicle in question prior to the accident, nor discussed the condition of the car with plaintiff. See Clark v. Clark (Sept. 1, 1998), Franklin App. No. 97APF10-1360, unreported (weight and credibility to be given evidence, including expert testimony are within the trial court's discretion).
Plaintiff nonetheless contends the evidence was sufficient to prove the car was in excellent condition. The trial court found the car needed brake work and window repair. While the record discloses that plaintiff had front brake work done on the car and a window switch installed, the evidence also reflects that the window was still in need of a motor. Moreover, Brendan testified the car had a few scratches and ripples on the roof. Additional evidence indicated the vehicle had been involved in a prior accident that left a scratch on the front side of the bumper, and it had cigarette burns on the interior, dirty mats, and minor wear and tear.
The trial court thus was within its discretion in using the purchase price of the vehicle to assess its fair market value. Fair market value is the value the vehicle would bring if it were sold to a willing buyer from a willing seller in the open market. Mayflower Transit, Inc. v. Commercial Trailer Co. (Sept. 28, 2000), Franklin App. No. 99AP-1058, unreported. The evidence indicates plaintiff and Brendan purchased the vehicle in September 1996 for $3,001.98. Plaintiff has not cited any authority holding the purchase price is not appropriate in assessing the fair market value of property, and indeed this court previously has used the purchase price to determine the fair market value of a vehicle. See Ford v. Brewer (Dec. 9, 1986), Franklin App. No. 86 AP-626, unreported.
The trial court arrived at its damages award by (1) starting with the purchase price of the vehicle, (2) crediting plaintiff for repairs made to the car, and (3) deducting $300 for wear and tear and mileage put on the car. The mileage on the vehicle when purchased September 2, 1996 was 69,180 miles; the mileage on February 7, 1997, at the time of the accident, was 74,005. Plaintiff's expert agreed $300 was a fair diminution in value due to additional mileage. Accordingly, the trial court's valuation of the fair market value of the vehicle prior to the accident was not error.
Plaintiff also challenges the trial court's valuation of the vehicle after the accident. The trial court found that plaintiff salvaged the vehicle for $423, and held that to be the fair market value of the vehicle after the accident. However, James Moore testified he purchased the vehicle for $400. The trial court apparently inadvertently added the tax paid by Moore onto the purchase price. Because that was error, we sustain plaintiff's second assignment of error to that limited extent and modify the damages award from $2,489 to $2,512.
Plaintiff's third assignment of error challenges the trial court's failure to award prejudgment interest. Plaintiff contends the trial court should have awarded interest from February 7, 1997, the date of the accident, not the date of judgment.
Prejudgment interest awards "in a civil action based on tortious conduct" is governed by R.C. 1343.03(C). Galmish v. Cicchini (2000),90 Ohio St.3d 22, 33; Eagle Am. Ins. Co. v. Frencho (1996),111 Ohio App.3d 213, 221.
R.C. 1343.03(C) provides, in relevant part:
 (1) In addition to the post-judgment interest described in division (B) of this section, interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties shall be computed from the date the plaintiff gave the defendant written notice in person or by certified mail that the cause of action accrued until the date that the judgment, decree, or order for the payment of money is rendered or from the date the plaintiff filed a complaint to commence the civil action until the date that the judgment, decree, or order for the payment of the money is rendered, whichever time period is longer, if, upon motion of any party to the civil action, the court determines at a hearing held subsequent to the verdict or decision in the civil action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case.
 (2) The prejudgment interest payable pursuant to division (C)(1) of this section shall be calculated from the date the plaintiff gave the defendant written notice in person or by certified mail that the cause of action accrued until the date that the judgment, decree, or order for the payment of the money is rendered or from the date that the plaintiff filed the complaint to commence the civil action until the date that the judgment, decree, or order for the payment of the money is rendered, whichever time period is longer, at the rate that is fifty per cent of the per annum rate determined in accordance with division (B) of section 5703.47 of the Revised Code. (Emphasis added.)
Thus, in an R.C. 1343.03(C) proceeding, the prevailing party must prove that the opposing party did not make a good faith effort to settle the case. Boone v. Vanliner Ins. Co. (2001), 91 Ohio St.3d 209,212.
The complaint sought interest from the date of the accident. The trial court awarded interest at ten percent per annum from the date of judgment. In order to award interest from the date of the accident, the trial court must make the findings required by R.C. 1343.03(C), including a finding that Brian failed to make a good faith effort to settle the case. The trial court, however, held no hearing to allow plaintiff to make the requisite proof, despite plaintiff's demand for prejudgment interest. Nor did the trial court indicate a basis for concluding a hearing was unnecessary. To that extent, the trial court erred. Plaintiff's third assignment of error is sustained to the extent indicated.
Having overruled plaintiff's first assignment of error, but having sustained plaintiff's second and third assignments of error to the extent indicated, we affirm in part and reverse in part the trial court's judgment and remand for further proceedings consistent with this opinion.
 __________________ BRYANT, P.J.
BOWMAN and BROWN, JJ., concur.