FIREMAN'S FUND INSURANCE COMPANY, Appellee,

v.

MITCHELL–PETERSON, INC., Appellant.

[Cite as *Fireman's Fund Ins. Co. v. Mitchell–Peterson, Inc.* (1989), 63 Ohio App.3d 319.]

Court of Appeals of Ohio,
Butler County.

No. CA88–07–100.

Decided June 19, 1989.

320

*Thompson, Hine & Flory* and *Christopher Bechold,* for appellee.

*Persky, Shapiro, Zamore, Salim, Arnoff & Nolfi Co., L.P.A., Joseph D. Zamore* and *Richard D. Bain,* for appellant.

JONES, Presiding Judge.

Defendant-appellant, Mitchell–Peterson, Inc., was the owner-operator of Perkins Cake and Steak in Middletown, Ohio, on July 9, 1982, when a fire severely damaged the restaurant. Appellant had purchased a fire insurance policy containing a business interruption provision from the appellee, Fireman's Fund Insurance Company, through an independent agency. As a result of the fire, appellant sought recovery for loss of income and additional expenses under the "business interruption policy."

Negotiations between the parties ensued to no avail seemingly due to the appellant's belief that the business interruption policy covered more items than appellee would allow. Consequently, appellee brought a declaratory judgment action in the Butler County Court of Common Pleas on March 7, 1983, in order to ascertain the actual losses sustained by appellant and the extent to which such losses are covered under the business interruption policy.

On May 6, 1983, appellant counterclaimed against appellee alleging a breach of contract, bad faith, negligence and fraud in issuing the policy and failing to pay the claim. On September 5, 1984, appellant filed a motion for partial summary judgment on appellee's complaint. On October 5, 1984, appellee also moved for summary judgment.

The trial court in an advisory opinion, without deciding which party might prevail on the merits as to damages, held that the "business interruption policy" covered net sales less cost of purchasing and processing the merchandise, plus those expenses which are continuing in nature.

Due to the procedural nature of these proceedings it was incumbent on defendant-appellant in the first instance to prove his case at trial on the counterclaim per R.C. 2315.01(C). Although the lower court correctly proceeded with appellant's case-in-chief first, the parties were essentially transposed due to the court's partial summary judgment decision on the contract claim in favor of plaintiff-appellee. The tort claims raised in the counterclaim by appellant and evidence concerning contract damages were the only remaining matters for the trial court to adjudicate.

On May 11, 1988, the case was tried before the court without a jury. The court entered its findings of fact, conclusions of law and judgment entry on June 15, 1988. It dismissed appellant's claims of bad faith, negligence and malice, and found that appellant was entitled to only $83,425.66. The court further held that the "period of restoration" was fifty days shorter than appellant contended, disallowing additional business loss during such period of time. Appellant timely filed this appeal on July 8, 1988, setting forth the following assignments of error:

*First Assignment of Error*

"The trial court erred to the prejudice of defendant-appellant in failing to interpret the insurance policy strictly against the insurance carrier."

*Second Assignment of Error*

"The trial court erred to the prejudice of defendant-appellant in failing to grant partial summary judgment for the appellant."

*Third Assignment of Error*

"The trial court erred to the prejudice of defendant-appellant in not permitting the appellant to introduce evidence regarding the interpretation and construction of the insurance policy."

*Fourth Assignment of Error*

"The trial court erred to the prejudice of defendant-appellant in describing the statements of the insurance carrier's agent as hearsay and in prohibiting testimony regarding those statements."

*Fifth Assignment of Error*

"The trial court erred to the prejudice of appellant in refusing to permit the appellant to make an offer of proof pursuant to Ohio Rule of Evidence 103(A)(2)."

*Sixth Assignment of Error*

"It was an abuse of discretion for the trial court to limit the scope of cross-examination during rebuttal to specific questions regarding specific testimony."

*Seventh Assignment of Error*

"It was error for the trial court to grant a motion pursuant to Civ.R. 41(B)(2) when the preponderance of the evidence supported the allegations of the counterclaim and the court had precluded appellant from introducing further admissible evidence to support its claims."

*Eighth Assignment of Error*

"The trial court erred to the prejudice of defendant-appellant in failing to award appellant damages for additional expenses in excess of the normal cost of operation as a result of the fire pursuant to the requirements of the insurance policy."

Under the first and second assignments of error, appellant contends that the trial court erred to its prejudice by strictly interpreting the contract of insurance when such policy was ambiguous. We disagree.

Well-established rules of contract construction require that common words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument. *First Natl. Bank v. Houtzer* (1917), 96 Ohio St. 404, 406–407, 117 N.E. 383, 383–384; *Olmstead v. Lumbermens Mut. Ins. Co.* (1970), 22 Ohio St.2d 212, 216, 51 O.O.2d 285, 288, 259 N.E.2d 123, 126–127. Further, where the terms in an existing contract are clear and unambiguous, a court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties. *Blosser v. Enderlin* (1925), 113 Ohio St.

121, 148 N.E. 393; *Fidelity & Casualty Co. of New York v. Hartzell Bros. Co.* (1924), 109 Ohio St. 566, 569, 143 N.E. 137, 137–138.

Appellant argues that the term "income" is properly defined as net sales of merchandise less the cost of merchandise. Such explanation is far too simplistic, since operating expenses employed to prepare Perkins food goods for consumer consumption are not included. In order to properly determine income loss as a result of a business interruption, appellant must allocate direct labor and manufacturing overhead when calculating its net income from operations.[1] Otherwise, a windfall would occur, since the costs of manufacturing and/or preparing foodstuff would in effect be improperly borne by the insurer.

"The purpose of a business interruption policy is to 'do for the insured in event of a business interruption * * * just what the business itself would have done if no interruption had occurred.'" *American Alliance Ins. Co. v. Keleket X–Ray Corp.* (C.A. 6, 1957), 248 F.2d 920, 928, 6 O.O.2d 373, 380 (applying Ohio law); *National Union Fire Ins. Co. v. Anderson–Prichard Oil Corp.* (C.A. 10, 1944), 141 F.2d 443, 445. Therefore, the trial court's determination on cross-motions for summary judgment that the "actual loss sustained" is net sales less the cost of goods sold, preparation costs, and selling and administrative expenses is consistent with the intent and purpose of the business interruption policy in question. Furthermore, the exclusion of various "additional expenses" which were found to be of a noncontinuing nature was proper since such expenses do not amount to an actual loss incurred by appellant.

Appellant, in the first and second assignments of error, claims that the "business interruption policy of insurance" is ambiguous on its face and, therefore, must be construed against appellee-insurer in favor of appellant-insured. It is unquestionably true that ambiguous insurance contracts are to be liberally construed in favor of the insured and strictly against the insurer. *American Policyholders Ins. Co. v. Michota* (1952), 156 Ohio St. 578, 46 O.O.

---

1. Appellant in a motion to supplement the record has brought to the attention of this court the case of *A & M Steel Co. v. Fireman's Fund Ins. Co.* (Dec. 30, 1988), Trumbull App. No. 3897, unreported, 1988 WL 142030. Although the *A & M Steel* case concerns the interpretation of an identical policy of insurance from the Trumbull County Court of Appeals, the opinion does not persuade us to reverse the trial court in the case *sub judice*. The pivotal question for resolution by this court is the total "actual loss sustained" for the period of restoration incurred by appellant. *A & M Steel*, however, does not delineate the manner of calculating "net sales" and "cost of goods sold." Therefore, *A & M Steel* does not control the resolution of the present case, thereby rendering the trial court's use of general accounting concepts for calculating "income" in connection with terms defined in the policy proper and consistent as a matter of law.

476, 103 N.E.2d 817; *American Alliance Ins. Co., supra,* 248 F.2d at 928, 6 O.O.2d at 380. However, the business interruption policy in question does not have such an attribute of ambiguity and, therefore, it was not necessary for the trial court to consider such rule of construction.

In *Associated Photographers, Inc. v. Aetna Cas. & Sur. Co.* (C.A. 8, 1982), 677 F.2d 1251, the court held that the policy language setting forth the amount of recovery was not ambiguous despite repeated efforts of appellant to show otherwise.[2] Thus, the court stated that the rules of contract construction were unnecessary since the policy was clear on its face.

The instant policy contains a similar clause, thereby compelling this court to agree with the trial court and conclude that the policy in question was unambiguously clear in favor of appellee.

■■■■ The resolution of the contract issue by the trial court was effectively deemed a Civ.R. 56(D) ruling although the court did not designate its opinion a partial summary judgment by journal entry. A partial summary judgment or ruling is the proper method of determining the meaning of a written contract since such questions are a matter of law. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph one of the syllabus. Additionally, summary proceedings are appropriate in those cases where the meaning of a contract is unambiguous. *Inland Refuse Transfer Co. v. Browning–Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 322, 15 OBR 448, 448–449, 474 N.E.2d 271, 272; *Alexander, supra.*

Accordingly, due to the fact that no genuine issue of material fact exists as to the interpretation of the "business interruption policy" at issue, appellant's assignments of error one and two are not well taken.

Appellant, in the third and fourth assignments of error, attacks the trial court's exclusion of testimony concerning the interpretation and construction of the "business interruption policy."

In effect, appellant argues that extrinsic evidence is necessary to construe the terms of the written policy due to its ambiguous language. However, this court, in the first and second assignments of error, held that the contract language is clear and unambiguous. Further, appellant's counsel in his opening statement at trial admittedly recognized and accepted the trial court's determination concerning the manner in which the loss sustained would be calculated. Therefore, appellant's argument is not persuasive.

---

2. The policy contained the following language:
"Company shall be liable for the Actual Loss Sustained * * * but not exceeding the reduction in gross earnings less charges and expenses which do not necessarily continue during the interruption of business * * *."

An inveterate rule of contract law provides that "[p]arol evidence is not admissible to construe the terms of a written contract where such terms are clear and free from ambiguity." *Dannemiller Grocery Co. v. Bessler Disappearing Stairway Co.* (App.1931), 11 Ohio Law Abs. 436. Further, if such an ambiguity is alleged, it must arise from the language of the contract itself and, therefore, courts will not admit parol testimony to construe an ambiguity forced into the contract to strain the apparent meaning of the language. *Cincinnati v. Gas Light & Coke Co.* (1895), 53 Ohio St. 278, 286–287, 41 N.E. 239, 241–242.

Thus, the trial court's determination that the contract of insurance in question does not contain ambiguous language eliminates any necessity for parol evidence to explain the meaning of the language. *Charles A. Burton, Inc. v. Durkee* (1952), 158 Ohio St. 313, 49 O.O. 174, 109 N.E.2d 265; *Wagner v. National Fire Ins. Co.* (1937), 132 Ohio St. 405, 8 O.O. 216, 8 N.E.2d 144. Hence, the trial court's exclusion of testimony principally from appellant's president, Kenneth Krupa, was proper as a matter of law.

An attempt to introduce statements made by an independent insurance agent, Shirleen Watts, through appellant's president, Kenneth Krupa, was properly characterized by the trial court as hearsay and thereby inadmissible pursuant to Evid.R. 802. Statements and representations made by an agent of an insurance company who solicited the policy, prior to and contemporaneous with the issuance of the policy, are inadmissible to vary the terms of the written policy. *Union Central Life Ins. Co. v. Hook* (1900), 62 Ohio St. 256, 56 N.E. 906, paragraph one of the syllabus.

Evid.R. 801(D)(2)(d) provides that statements of an employee or agent of a party opponent are not hearsay and, therefore, are admissible as an adoptive admission against such party. Appellant maintains that such evidentiary rule permits the testimony of Krupa regarding the statements of Watts to be admissible. We do not find appellant's argument persuasive due to the fact that Watts was neither an employee nor an agent of appellee; and furthermore, such parol evidence cannot, consistent with contract law principles, change or vary the terms of the final written document.

Appellant's third and fourth assignments of error are overruled.

In conjunction with the trial court's exclusion of evidence pertaining to contract interpretation and construction, appellant sought to proffer evidence of the same. In the fifth assignment of error, appellant contends that the lower court's failure to permit such a proffer was prejudicial and constituted reversible error.

Evid.R. 103(A)(2) provides:

"Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

"* * *

"(2) Offer of Proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked. * * * "

Counsel must be permitted to proffer excluded evidence since it is a prerequisite for appellate review. *State v. Rivers* (1977), 50 Ohio App.2d 129, 4 O.O.3d 100, 361 N.E.2d 1363, paragraph two of the syllabus. An offer of proof serves the salutary purpose of assisting an appellate tribunal in determining whether the lower court's exclusion of certain evidence was prejudicial to a "substantial right" of the complaining party. *State v. Gilmore* (1986), 28 Ohio St.3d 190, 28 OBR 278, 503 N.E.2d 147, syllabus. For this reason, proffers should be freely permitted outside the presence of the trier-of-fact, when some or all of a witness' direct examination is excluded. Evid.R. 103(A)(2). In fact, we have held on at least one occasion that the failure to make an offer of proof was fatal to a successful assignment of error. *Reif v. G & J Pepsi Cola Bottlers* (Feb. 15, 1988), Warren App. No. CA87–05–041, unreported, 1988 WL 14052. Accordingly, as a general rule, a refusal to permit a proffer when direct examination evidence is excluded is error.

Notwithstanding the above-mentioned general rule regarding the importance of an offer of proof, we are not persuaded that the trial court abused its discretion in refusing to permit appellant's proffer. First, the lower court's own ruling pursuant to Civ.R. 56(D) interpreted this business interruption policy as a matter of law. Since the issue had been previously adjudicated prior to trial, denying parol testimony or an offer of proof concerning the same is not error for the reason that such an offer would be fruitless. Second, the proffered testimony would not benefit this court in the appellate review process, since the excluded testimony was clearly apparent from both the summary judgment proceedings and the trial record.

Therefore, because we conclude an offer of proof under those circumstances would not have aided appellate review in this matter as contemplated by Evid.R. 103(A)(2), appellant's fifth assignment of error is not well taken.

Appellant, in the sixth assignment of error, maintains that it was prejudicial for the trial court to limit the scope of its examination of an adverse, hostile witness, adjuster Donald Fobes.

Evid.R. 611(A) provides that the trial court shall exercise reasonable control over the conduct of the trial, including the mode and order of examining

witnesses and presenting evidence. In connection with the broad discretion afforded a trial court in the introduction of evidence and examination of witnesses, R.C. 2315.01 specifically sets forth the trial procedure to be followed absent special circumstances. R.C. 2315.01 states:

"(C) The party who would be defeated if no evidence were offered on either side, first, must produce his evidence, and the adverse party must then produce his evidence.

"(D) The parties then shall be confined to rebutting evidence, unless the court for good reasons, in the furtherance of justice, permits them to offer evidence in their original cases."

The trial court in this instance limited appellant in its examination of a hostile, rebuttal witness to those questions specifically elicited in appellee's case-in-chief. Appellant argues, pursuant to Evid.R. 611(B) regarding cross-examination, that all relevant materials to its defense should be admissible when questioning an adverse witness on rebuttal. Appellant's argument is not persuasive in view of the fact that appellant has mischaracterized such rebuttal testimony as the cross-examination of an adversary's witness. The record of these proceedings clearly shows that the witness in question was never called by the appellee, but, instead, was called on rebuttal by this appellant as a hostile, adverse witness. Further, appellant was able to fully cross-examine appellee's witnesses as presented in the course of trial.

By both the rules of evidence and Ohio statute, orderly trial procedure requires that each party, at trial, produce in chief all evidence in support of his case upon which he has the burden of proof, unless the court for good reasons, in furtherance of justice, allows him to reopen his case. *Cook v. Williams* (1952), 92 Ohio App. 277, 284, 49 O.O. 356, 108 N.E.2d 232. In the instant matter, appellant on rebuttal sought to introduce additional testimony concerning "due diligence" and the conduct of insurance representatives. In particular, appellant called adjuster Fobes to testify not as a "true" rebuttal witness, but instead to bolster its case-in-chief, since appellee failed to introduce the alleged, damaging testimony of adjuster Fobes. The trial court properly limited rebuttal to specific statements previously elicited from appellee's witnesses. Therefore, the court prohibited any open-ended testimony by Fobes on rebuttal directed at "implications" alleged to have been made in appellee's case.

Appellant relies on *Katz v. Enzer* (1985), 29 Ohio App.3d 118, 29 OBR 133, 504 N.E.2d 427, for the proposition that rebuttal testimony concerning all relevant matters is permissible when a material issue is introduced by the opposing party's case-in-chief. This reliance is misplaced since the court in *Katz* found as error the failure of the trial court to allow plaintiff to rebut a

statement of defendant's witness. The lower court in these proceedings clearly allowed rebuttal with an identifiable caveat limiting the scope to statements directly made by an appellee witness.

Therefore, the trial court did not abuse its discretion by restricting the scope of rebuttal evidence to questions specifically elicited in appellee's case. Accordingly, appellant's sixth assignment of error is not well taken.

Appellant's seventh assignment of error attacks the trial court's dismissal of its counterclaim alleging bad faith, fraud in the inducement and negligence, pursuant to Civ.R. 41(B)(2) and Civ.R. 41(C).

Civ.R. 41(C) mandates that the provisions of Civ.R. 41(B)(2), concerning involuntary dismissals in a non-jury action, apply to cases involving a counterclaim. Civ.R. 41(B)(2) sets forth the legal framework for an involuntary dismissal in a non-jury action:

"After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52 if requested to do so by any party."

In applying a standard for reviewing a Civ.R. 41(B)(2) dismissal, it has been determined that:

"[T]he court, in a non-jury case, on a motion for involuntary dismissal, is not required to review the evidence in the light most favorable to the plaintiff but is required only to determine whether the plaintiff has made out his case by a preponderance of the evidence. * * *

"It follows that the judge * * * upon the motion for dismissal being made, was entitled to weigh the evidence. His conclusions may not be set aside unless they are erroneous as a matter of law or against the manifest weight of the evidence." *Altimari v. Campbell* (1978), 56 Ohio App.2d 253, 256, 10 O.O.3d 268, 270, 382 N.E.2d 1187, 1190, quoting *Jacobs v. Bd. of Cty. Commrs.* (1971), 27 Ohio App.2d 63, 65, 56 O.O.2d 245, 246, 272 N.E.2d 635, 636.

An examination of the trial court's findings of fact reveals that appellant has failed on all counts to prove any act of appellee which would constitute bad faith, fraud in the inducement and/or negligence. The findings of fact

clearly state that no credible evidence was found in the record indicating such bad faith, negligence and/or malice.

Appellant argues that excluded testimony has resulted in a lack of proof on such claims. This argument is clearly superfluous. The court correctly dismissed appellant's counterclaim since the evidence failed to show the existence of fraudulent and/or negligent conduct on the part of agents of the appellee.

The bad faith claim of appellant is also unsupported by any conduct of appellee. Appellant maintains that a change or mistake in an initial settlement assessment is grounds for a bad faith tort. This view is not shared by either this court or the Supreme Court of Ohio.

In the instant case, agents of the appellee retracted an initial assessment of recoverable damages within a week of an alleged offer of $144,134. The appellee withdrew its initial offer based upon a mistaken policy interpretation and calculation improprieties by its agents. Subsequently, a significantly lower settlement offer of approximately $66,000 was submitted by appellee, which was unacceptable to appellant, thereby resulting in the instant litigation.

Evidence of facts indicating that an insurer refuses to settle within policy limits is not, in itself, conclusive of the insurer's bad faith and, therefore, does not give rise to tort liability. In order to recover in tort, the insured has the burden to show the refusal to settle was not made in good faith. Appellant in this instance has failed to sustain such burden:

"A lack of good faith is the equivalent of bad faith, and bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrong-doing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." *Slater v. Motorists Mut. Ins. Co.* (1962), 174 Ohio St. 148, 21 O.O.2d 420, 187 N.E.2d 45, paragraph two of the syllabus.

Accordingly, appellant's seventh assignment of error is not well taken.

The eighth assignment of error contends that the trial court erred in failing to award damages for "additional expenses" in excess of the normal cost of operation.

In the first issue under this assignment of error, appellant has argued that damages should be allowed for the cost of buying out the remaining payments on an equipment lease. However, allowing these damages would operate as a windfall to appellant since appellee has already paid for the value of the leased equipment. Furthermore, appellant subsequently purchased

new equipment with insurance proceeds, thereby receiving new, undepreciated equipment as a result of the fire.

Section (C)(2) of the policy allows for "amounts in excess of the normal costs of the operations necessary and actually expended to return the business to normal during the period of restoration * * *." [3]  Clearly, the cost of an accelerated lease payment is not an actual expense made to return the business to normal operations, since the appellee-insurer paid for the value of the leased equipment damaged as a result of the fire.  In any event, Section (B)(3) of the policy excludes an accelerated lease payment from coverage to the extent not caused by the business interruption.[4]

▮ Issue two in the eighth assignment of error concerns the calculation of the business interruption loss.  Appellant maintains that the loss of income sustained for the sixty-day period after the court-designated date of restoration on January 3, 1983, is properly payable under the policy.  The purpose of this provision is to reimburse the insured for the difference between anticipated actual profit and experienced profit during the extension of the coverage period.

A condition of this restoration provision requires the appellant-insured to restore the business with "due diligence and dispatch."  The trial court found that a reopening date of February 23, 1983, some seven months after the fire, was unreasonable and rendered appellant non-diligent in its efforts to restore operations.

Therefore, the trial court did not allow extra income expenses to be paid to appellant after the court-determined restoration date of January 3, 1983.  Further, upon reopening, appellant reached its anticipated profit levels immediately, thereby rendering the income supplement unnecessary.

We find that the trial court properly characterized the restoration provision at issue and hold that appellant was not diligent in efforts to restore business operations as required by the policy.  In addition, since income levels reached prior pre-fire levels, the trial court was proper in refusing to allow appellant additional income as a restoration expense.

---

**3.**  "2.  Additional Expense.  The amounts in excess of the Normal Costs of the operations necessarily and actually expended to return the business to normal during the Period of Restoration.  Any salvage value of property obtained for temporary use during the Period of Restoration, which remains after the resumption of normal operations, shall be taken into consideration in the adjustment of any loss hereunder."

**4.**  "3.  An increase in loss due to the suspension, lapse or cancellation of any lease, license, contract or order unless such suspension, lapse or cancellation results directly from the interruption of business, and then this Company shall be liable for only such loss as affects the Insured's income during, and limited to, the Period of Restoration covered hereunder."

Appellant further argues that those attorney fees expended during the period of restoration are recoverable as an additional expense to return the business to normal. We disagree, because the attorney fees incurred by appellant were not for the purpose of returning the business to operation, but, instead, were expended in pursuing an insurance claim. Therefore, the attorney fees are not recoverable under the policy and remain a part of appellant's cost of doing business.

For the foregoing reasons, the eighth assignment of error is not well taken.

Accordingly, all of appellant's eight assignments of error are hereby overruled, consistent with this opinion.

*Judgment affirmed.*

HENDRICKSON and YOUNG, JJ., concur.