DECISION AND JUDGMENT ENTRY
{¶ 1} Kace A. Hogue, John R. Hogue, and John K. Hogue appeal the trial court's decision granting Westfield Insurance Company summary judgment. They assert that the trial court incorrectly determined that they were not entitled to uninsured/underinsured motorist (UM/UIM) coverage under Westfield's commercial automobile insurance policy and its umbrella policy issued to John R. Hogue's employer, Jani-Source, Inc. Appellants argue that under the rationale of Scott-Pontzer v. LibertyMut. Fire Ins. Co. (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116, they qualify as "insureds" under the policies. Because neither of Westfield's policies suffers the same ambiguity that the Ohio Supreme Court found present in the Scott-Pontzer policy, and because the definitions of an "insured" are not otherwise ambiguous, we disagree with appellants. Therefore, we affirm the trial court's judgment.
 {¶ 2} In July of 2000, Mrs. Hogue and her son, John K. Hogue (John), suffered injuries in an automobile accident that allegedly was caused by the negligence of Stephanie Doubblestein. At the time of the accident, Jani-Source, Inc. employed Mr. Hogue. According to the policy in effect on the date of the accident,[1] Jani-Source carried (1) a commercial automobile liability insurance policy with Westfield that contained a $500,000 liability limit and a $100,000 UM/UIM limit and (2) an umbrella policy with a $2 million limit.
 {¶ 3} Westfield's automobile liability policy lists the "Named Insureds" as Green Care, Inc., Waller Construction Inc., and Jani-Source, Inc. An "insured" generally is defined as "any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage." For purposes of UM/UIM coverage, the policy defines an "insured" as follows: "1. The Named Insured. 2. If the Named Insured is an individual, any `family member.' 3. An `employee' of the Named Insured * * * while `occupying' a covered `auto' the Named Insured owns, hires or borrows except: a. The Named Insured's `employees' if the `auto' is owned by that `employee' or a member of his or her household * * *."
 {¶ 4} The umbrella policy defines an "insured" as follows: "1. If you are designated in the Declarations as: a. An individual, you and your spouse are insureds but only in connection with the conduct of a business of which you are the sole owner. b. A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds but only in connection with the conduct of your business. c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers. d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your `executive officers' and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders."
 {¶ 5} In June of 2002, Westfield filed a complaint for declaratory judgment against appellants. Westfield requested the trial court to declare that appellants were not entitled to UM/UIM coverage under the automobile liability policy or under the umbrella policy. Both parties subsequently filed cross-motions for summary judgment. The trial court overruled appellants' motion and granted Westfield's motion.
 {¶ 6} Appellants timely appealed the trial court's judgment and raise the following assignment of error: "The trial court erred by granting summary judgment in favor of plaintiff-appellee Westfield Insurance Company."
 {¶ 1} In their sole assignment of error, appellants assert that the trial court erroneously entered summary judgment in Westfield's favor. Appellants claim that they qualify as "insureds" under Westfield's commercial automobile liability policy and under its umbrella policy because the policies' definitions of an "insured" share the same ambiguity present in Scott-Pontzer. We disagree. Both Westfield's automobile liability policy and umbrella policy unambiguously define who is an "insured" and the definitions are not open to interpretation. Thus, contrary to appellants' argument, Westfield's policies do not suffer the same ambiguity that the Ohio Supreme Court found present inScott-Pontzer. Based upon our review of the applicable policy language, we conclude that appellants are not "insureds" and, therefore, are not entitled to UM/UIM coverage.
 {¶ 2} We review a trial court's decision to grant summary judgment on a de novo basis. See, e.g., Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105, 671 N.E.2d 241. Accordingly, we conduct an independent review of the record and afford no deference to the trial court's determination. See, e.g., Brown v. Scioto Cty. Bd. Of Commrs.
(1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. Summary judgment under Civ.R. 56(C) is appropriate when: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence, when viewed most strongly in favor of the non-moving party, that reasonable minds can come to a conclusion only in favor of the moving party.Grafton, supra.
 {¶ 3} First, we address appellants' argument that because the employer did not validly reduce or reject UM/UIM coverage, they are insureds under both the UM/UIM and the umbrella policies.
 {¶ 4} Former R.C. 3937.18[2] required "automobile liability or motor vehicle liability" insurance policies to offer UM/UIM coverage "in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage." Under that statutory scheme, an insurer's failure to properly offer UM/UIM coverage results in UM/UIM coverage being implied as a matter of law. See, e.g., Schumacher v. Kreiner
(2000), 88 Ohio St.3d 358, 359-360, 725 N.E.2d 1138 (citing Gyori v.Johnston Coca-Cola Bottling Group, Inc. (1996), 76 Ohio St.3d 565,669 N.E.2d 824).
 {¶ 5} Offers of UM/UIM coverage must be in writing and must contain "a brief description of the coverage, the premium for that coverage, and an express statement of the UM/UIM coverage limits." Linkov. Indemnity Ins. Co. of N. Am. (2000), 90 Ohio St.3d 445, 449,739 N.E.2d 338; see, also, Kemper v. Michigan Millers Mut. Ins. Co.,98 Ohio St.3d 162, 2002-Ohio-7101, 781 N.E.2d 196, at ¶ 4[3];Gyori, 76 Ohio St.3d at 569. Additionally, the name of the entity must appear on the selection form. Linko, 90 Ohio St.3d at 450.
 {¶ 6} In this case, we assume for the sake of argument that Westfield failed to properly offer UM/UIM coverage under both policies. Therefore, UM/UIM coverage is implied as a matter of law in an amount equal to the liability limits, $500,000 and $2 million, respectively. However, simply because UM/UIM coverage is implied as a matter of law does not automatically entitle appellants to UM/UIM coverage under the policies. Appellants still must show that they are "insureds".
 {¶ 7} While determining whether appellants are "insureds," we may not look to exclusions or restrictions to coverage contained within the liability provisions of the policies. However, nothing prohibits us from using the definition of an "insured" within the automobile liability policy's UM/UIM provisions or the definition of an "insured" under the umbrella policy. See Lawler v. Fireman's Fund Ins. Co. (N.D.Ohio 2001),163 F. Supp.2d 841, 854 (stating that Scott-Pontzer "never held" that "any limiting language in an insurance policy's definition of an insured is ineffective for purposes of implied underinsured motorist coverage"); see, also, Waters v. George, Athens App. No. 02CA36, 2003-Ohio-2093
(concluding that a court may look to policy provisions defining an insured even when UM/UIM coverage is implied as a matter of law). But, see, Morrison v. Emerson, Stark App. No. 2002CA00414, 2003-Ohio-2708;Szekeres v. State Farm Fire Cas. Co., Licking App. No. 02CA00004,2002-Ohio-5989; Walton v. Continental Cas. Co., Holmes App. No. 02CA002,2002-Ohio-3831. Thus, to be entitled to UM/UIM coverage, appellants still need to show that they qualify as "insureds" under the applicable policies. If appellants are unable to do so, our inquiry is at an end. SeeScott-Pontzer, 85 Ohio St.3d at 662 (stating that if a court finds that the claimant "was not an insured under the polic[y], then [the] inquiry is at an end").
 {¶ 8} The interpretation of an automobile liability insurance policy presents a question of law that an appellate court reviews without deference to the trial court. See, e.g., Nationwide Mut. Fire Ins. Co.v. Guman Bros. Farm (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684;Alexander v. Buckeye Pipeline Co. (1978), 53 Ohio St.2d 241,374 N.E.2d 146, paragraph one of the syllabus. In interpreting an automobile liability insurance policy, when the language used is clear and unambiguous, a court must enforce the contract as written and give words used in the contract their plain and ordinary meaning. SeeCincinnati Indemn. Co. v. Martin (1999), 85 Ohio St.3d 604, 607,710 N.E.2d 677. As long as the contract is clear and unambiguous, "the court need not concern itself with rules of construction or go beyond the plain language of the agreement to determine the rights and obligations of the parties." Seringetti Constr. Co. v. Cincinnati (1988),51 Ohio App.3d 1, 4, 553 N.E.2d 1371. Thus, when the terms of an insurance contract are clear and unambiguous, the trial court may not effectively "create a new contract by finding an intent not expressed in the clear language employed by the parties." Fireman's Fund Ins. Co. v.Mitchell-Peterson, Inc. (1989), 63 Ohio App.3d 319, 325, 578 N.E.2d 851. Nor may the court depart from strict construction of the insurance contract to change the obvious intent of the parties in order to provide an individual with coverage. Hybud Equip. Corp. v. Sphere Drake Ins. Co.
(1992), 64 Ohio St.3d 657, 665, 597 N.E.2d 1096; Rhoades v. EquitableLife Assurance Society of the United States(1978), 54 Ohio St.2d 45, 47,374 N.E.2d 643.
 {¶ 9} In Scott-Pontzer, the Ohio Supreme Court concluded that, in the absence of clear, unambiguous language to the contrary, the word "you," as used in an automobile liability policy issued to a corporation, included the corporation's employees. In that case, Christopher T. Pontzer was employed at Superior Dairy, Inc. (Superior Dairy) and was killed while driving his wife's vehicle. Superior Dairy carried an automobile liability insurance policy with Liberty Mutual Fire Insurance Company ("Liberty Fire") that contained a provision for UIM coverage. Superior Dairy also carried an umbrella/excess insurance policy with Liberty Mutual Insurance Company (Liberty Mutual).
 {¶ 10} Pontzer's wife, as executor of her husband's estate and as a surviving spouse, sought UIM benefits under Superior Diary's policy with Liberty Fire. She also sought benefits under the umbrella policy that Superior Dairy carried with Liberty Mutual. The supreme court concluded that Pontzer's wife was entitled to coverage under both policies.
 {¶ 11} In reaching its decision, the court noted that the Liberty Fire policy defined an "insured" for purposes of UIM coverage as: "1. You. 2. If you are an individual, any family member. 3. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction. 4. Anyone for damages he or she is entitled to recover because of bodily injury sustained by another insured." Id. at 663.
 {¶ 12} The court determined that the word "you" as used in the policy was ambiguous. The court stated that in the absence of clear, unambiguous language to the contrary, the word "you," as used in a policy issued to a company, includes the company's employees. Id. at 664. Thus, construing the insurance contract liberally in favor of the insured, the court concluded that the decedent was an insured under the Liberty Fire UIM policy provisions. Id. at 665. The court explained: "[I]t would be reasonable to conclude that `you,' * * * also includes * * * employees, since a corporation can act only by and through real live persons. It would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle. Here, naming the corporation as the insured is meaningless unless the coverage extends to some person or persons including to the corporation's employees."
Scott-Pontzer, 85 Ohio St.3d at 664.
 {¶ 13} Here, Westfield's UM/UIM policy provisions define an "insured" as: "1. The Named Insured. 2. If the Named Insured is an individual, any `family member.' 3. An `employee' of the Named Insured * * * while `occupying' a covered `auto' the Named Insured owns, hires or borrows except: a. The Named Insured's `employees' if the `auto' is owned by that `employee' or a member of his or her household * * *." Westfield's policy does not share the same ambiguity found in theScott-Pontzer policy. Its policy does not define an "insured" as "you." Instead, the policy provides that an "insured" includes the "named insured," which includes the corporations and employees, but only if the employee does not own the car. Nowhere in Westfield's UM/UIM provisions is an "insured" defined as "you." Westfield's policy clearly and unambiguously defines an "insured" and that definition is not reasonably susceptible to more than one interpretation.
 {¶ 14} Furthermore, Westfield's policy addresses the concern of the Scott-Pontzer court, that issuing an automobile liability policy to a corporation is meaningless unless employees are included within the definition of an insured. Westfield's policy includes employees within the definition of an insured, but only if the employee is injured in an automobile that the corporation owns.
 {¶ 15} Therefore, because appellants do not qualify as "insureds" under Westfield's automobile liability policy, they are not entitled to coverage under the UM/UIM policy provisions and our analysis need not proceed any further. See Scott-Pontzer, 85 Ohio St.3d at 662 (stating that if a court finds that the claimant "was not an insured under the polic[y], then [the] inquiry is at an end").
 {¶ 16} Moreover, appellants do not qualify as "insureds" under Westfield's umbrella policy. The policy defines an "insured" as: "1. If you are designated in the Declarations as: a. An individual, you and your spouse are insureds but only in connection with the conduct of a business of which you are the sole owner. b. A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds but only in connection with the conduct of your business. c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers. d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your `executive officers' and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders." This definition is clear and unambiguous. An "insured" includes the corporations and some of its employees ("executive officers and directors"), but "only with respect to their duties" as such. Appellants have not argued that they are "executive officers or directors."
 {¶ 17} Moreover, the policy provisions clearly express the parties' intent that not all employees are covered at all times. The definition of an "insured" reveals the parties' intent to provide coverage for employees only for their activities in that context, i.e., as employees. Appellants do not dispute that at the time Mrs. Hogue and John were injured, neither was engaged in employment activities with the corporation.
 {¶ 18} Thus, Westfield's umbrella policy, like its automobile liability policy, addresses the concern of the Scott-Pontzer court, that issuing an automobile liability policy to a corporation is meaningless unless employees are included within the definition of an insured. The policy includes some employees within the definition of an insured, but only to the extent that they are functioning in their capacities as an employee.
 {¶ 19} Therefore, appellants are not insureds under the umbrella policy and are not entitled to UM/UIM coverage. Our decision renders the parties' remaining arguments moot.
 {¶ 20} Consequently, we overrule appellant's sole assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. Kline, J.: Concur in Judgment and Opinion.
[1] Appellants argue that a policy with a May 1, 1997 effective date governs our analysis. We do not agree. Appellants, in their answer to Westfield's complaint, admitted that the May 1, 2000 to May 1, 2001 policy attached to the complaint was the applicable policy.
[2] Over the past nine years, the General Assembly has amended R.C.3937.18 several times. The most recent enactment, S.B. 97, eliminated the requirement of mandatory offering of UM/UIM coverage.
[3] Although Linko interpreted the S.B. 20 version of R.C. 3937.18,Linko has continuing validity to the H.B. 261 version of R.C. 3937.18. See Kemper. In Kemper, the Ohio Supreme Court stated, without any explanation, that the requirements set forth in Linko continue to apply, despite the H.B. 261 amendment that a signed rejection form, standing alone, creates a presumption that the insured validly rejected UM/UIM coverage. The court's opinion reads: "(1) Are the requirements of Linkov. Indemnity Ins. Co. [2000], 90 Ohio St.3d [445, 739 N.E.2d 338], relative to an offer of UM/UIM coverage, applicable to a policy of insurance written after enactment of [1997] HB 261 and before [2001] SB 97? (2) If the Linko requirements are applicable, does, under [1997] HB 261, a signed rejection act as an effective declination of UM/UIM coverage, where there is no other evidence, oral or documentary, of an offer of coverage?" We answer certified question No. 1 in the affirmative and certified question No. 2 in the negative." Id., at ¶¶ 2, 3, and 4.