[Cite as *In re S.B.*, 2013-Ohio-3178.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CHAMPAIGN   COUNTY

IN THE MATTER OF:                              :

                                              :          Appellate Case No. 2012-CA-39

S.B.                              :

                                              :          Trial Court Case No. 2012-JC-25

                                              :

                                              :

                                              :          (Juvenile Appeal from

                                              :           Common Pleas Court)

                                              :

. . . . . . . . . . .

O P I N I O N

Rendered on the 19th day of July, 2013.

. . . . . . . . . . .

JAMES S. ARMSTRONG, Atty. Reg. #0020638, 131 North Ludlow Street, Suite 386 Talbott Tower, Dayton, Ohio 45402
        Attorney for Appellant, Mother

KEVIN TALEBI, Atty. Reg. #0069198, 200 North Main Street, Urbana, Ohio 43078
        Attorney for Appellee, Champaign County Children Services

JACOB JEFFRIES, Atty. Reg. #0078470, Daniel and Jeffries, 133 South Main Street, New Carlisle, Ohio 45344
        Guardian Ad Litem

. . . . . . . . . . . . .

HALL, J.,

{¶ 1} S.B.'s Mother appeals the trial court's order of disposition that gives temporary custody of her daughter Autumn[1] to Autumn's father. Mother argues that the court should have given temporary custody of Autumn to her maternal grandmother. Finding no reversible error, we affirm.

## I. Facts

{¶ 2} On June 28, 2012, Champaign County Department of Job and Family Services (CCDJFS) filed a complaint asking the trial court to adjudicate Autumn either a neglected child under R.C. 2151.03(A)(2) or a dependent child under R.C. 2151.04(C). CCDJFS sought protective supervision, or alternatively, custody to a relative, temporary custody, permanent custody, or placement in a planned permanent living arrangement. Father filed a motion for legal custody. The court appointed a guardian ad litem (GAL) to represent Autumn's interests. On CCDJFS's oral motion at a pre-adjudication hearing, the court issued temporary orders while the case was pending that gave Grandmother temporary custody of Autumn and placed Autumn under the protective supervision of CCDJFS. At the adjudication hearing, Mother admitted to Autumn's dependency, and with the agreement of all parties, the court dismissed the neglect charge and found Autumn dependent.

{¶ 3} At the dispositional hearing, Autumn's caseworkers, the GAL, Mother, Grandmother, and Father testified. The GAL had filed an initial report and a supplemental report, both of which were admitted into evidence. After the hearing, the court issued a written decision that gives Father temporary custody of Autumn under the protective supervision of CCDJFS.

{¶ 4} Mother appealed.

---

[1] We use this pseudonym to refer to S.B., the minor child that is the subject of this case.

## II. Review

{¶ 5}     Mother assigns two errors to the trial court. The first alleges that the court abused its discretion by giving Father temporary custody, and the second alleges that the court erred by excluding hearsay. We review the assignments of error in reverse order.[2]

### A. Hearsay

{¶ 6}     The second assignment of error challenges the trial court's exclusion of hearsay evidence at the dispositional hearing. Mother contends that this evidence is admissible because it is relevant to whether it is in Autumn's best interest to be placed with Father.

{¶ 7}     The trial court excluded statements that Autumn made to Mother and Grandmother concerning three matters. The first statements concerned Father's use of a racial slur. Mother was asked about her concerns with Autumn's placement with Father. One of Mother's concerns is, "He–he's very prejudiced. He uses the N word a lot." (Tr. 105). Mother said that Autumn does not approve of his language. When counsel for Mother asked her how she knows this, she answered, "[Autumn]'s told me." (Tr. 105). Counsel for Father then objected, and the trial court sustained the objection. The second excluded statement concerned why Autumn did not want to go to school. Mother's counsel asked Grandmother, "Did [Autumn] ever indicate why she didn't want to go to school?" (Tr. 141). Father's counsel objected, and the trial court sustained. The last set of excluded statements concerned what went on at Father's house. Mother's counsel asked Grandmother about her concerns with placing Autumn with Father. Grandmother indicated that she had concerns, saying, "[Autumn]'s told us things that's gone on at her father's house." (Tr. 146). Counsel then asked, "For the record I will ask you what are the

---

[2]CCDJFS, the appellee, did not file a brief.

things that [Autumn] has indicated at her father's house?" (*Id*.). Counsel for Father objected, and the trial court sustained.

{¶ 8}  After the witnesses had testified, counsel for Mother wanted to proffer the excluded hearsay, but Father's counsel objected, saying, "I don't understand. We're proffering testimony that we're all in agreement is hearsay so the Judge can rule if it's hearsay or not?" (Tr. 156). "No," said Mother's counsel, "in a dispositional hearing on an abuse, neglect and dependency case hearsay is permissible evidence. The rules of hearsay do not apply." (*Id*.). Mother's counsel argued that the testimony must be proffered for this Court to review the issue. But counsel also said she agreed that the main issue was "not the specific testimony" but whether hearsay is generally admissible in this type of dispositional hearing. (Tr. 159). The trial court decided not to allow the proffer: "[Y]ou've, I believe preserved the issue for the record with your objection. If the case is, is reversed, depending on what the decision is, if it is reversed for that reason and remanded back for that, then we'll hear that testimony at that time." (*Id*.).

{¶ 9}  Mother's counsel is correct that, other than at a dispositional hearing for permanent custody, hearsay is generally admissible at a dispositional hearing, as long as the hearsay is material and relevant. Juv.R. 34(B)(2); R.C. 2151.35(B)(2)(b); *In re Brown*, 2d Dist. Darke No. 1676, 2006-Ohio-3189, ¶ 37. But the court is not required to admit such evidence. *Matter of Seymour*, 4th Dist. Hocking No. 92 CA 5, 1993 WL 49263, *3 (Feb. 23, 1993) ("[N]either the above cited statute or rule require the trial court to admit hearsay evidence. Both provide that the court *may* admit such evidence. Thus, such admission is discretionary with the court." (Emphasis sic.)). "The evidentiary rules of competency and relevancy remain in force." *In Matter of Spaulding*, 6th Dist. Lucas No. L-92-180, 1993 WL 115934, *4 (Apr. 16, 1993), citing

Evid.R. 601, 602, 401, 402, 104.

{¶ 10} The trial court here should have allowed counsel to proffer the excluded hearsay evidence. We agree with the Twelfth District Court of Appeals, which has held that proffers should be freely permitted outside the hearing of the trier-of-fact when some or all of a witness's direct examination is excluded. *Fireman's Fund Ins. Co. v. Mitchell-Peterson, Inc.,* 63 Ohio App.3d 319, 329, 578 N.E.2d 851, 857 (12th Dist. 1989). But even without a proffer, error may be predicated on an exclusion if the substance of the excluded evidence is "apparent from the context within which questions were asked." Evid.R. 103(A)(2); *Campbell v. Johnson*, 87 Ohio App.3d 543, 551, 622 N.E.2d 717 (2d Dist.1993) (saying that "one must show that the substance of the excluded evidence was made known to the court by proffer or was apparent from the context within which questions were asked"). Nevertheless, "[a]n evidentiary ruling by a trial court may not be the basis of a claim of error unless the person claiming that error can establish that a substantial right has been affected." *Lips v. Univ. of Cincinnati College of Medicine*, 10th Dist. Franklin No. 12AP-374, 2013-Ohio-1205, ¶ 49, citing Evid.R. 103. In order to do this, "one must show that the alleged error affected the final determination of the case." *Id.*, citing *Campbell* at 551.

{¶ 11} Here, the substance of the excluded hearsay evidence is apparent. However Mother fails to convince us that the exclusion affected the trial court's decision. With regard to Father's language, we conclude that the trial court's decision would not be affected by knowing whether Autumn disapproved. What is important is the allegation that he used such language, an allegation which Mother's testimony supports, and which was received without objection. (Tr. 105). Nor do we believe that the court's decision could be affected by knowing Autumn's reasons

for disliking school. The point had been made that she had missed a considerable amount of school and was now participating in an online program called ECOT, about which there was descriptive testimony. Moreover the GAL report, which had been admitted into evidence, stated that "[s]he does not like school for various reasons." We conclude the precise reasons why she disliked her previous school are not of consequence and would not have affected the trial court's decision. Finally, as for what went on at Father's, we note that when Mother was asked about her concerns with giving Father custody, she testified, without objection, that "[h]e's been known to be violent. He – he's very prejudiced. He uses the N word a lot. He gives her cigarettes. He does. He took her to a – that party, and there was nudity." (Tr. 105). And during the cross examination of Father about what went on at his house, the same two concerns were addressed by counsel for Mother when Father was asked about cigarettes and the party. This was their exchange about the party:

Q. Now, you talked about some of the activities that you've done with [Autumn] since she's been visiting with you regularly?

* * *

Q. You referred to one as a hog roast?

* * *

Q. Was that with friends of yours who ride motorcycles?

A. Yes, it is.

Q. It was more commonly known as biker parties?

A. No, it was not. It was a family group.

Q. Was there alcohol served?

A. Yes, there was.

Q. Were there people who were intoxicated at this party?

A. Not at the time that we had left, no.

Q. Were there people who were in various states of undress at parts–at times of this party?

A. No.

Q. No one was ever undressed at this party?

A. No.

Q. And if [Autumn] indicated she saw folks who were undressed, she would be lying?

A. If she seen something I didn't, then that could be, but I doubt it.

(Tr. 89-90).

{¶ 12}    It is apparent that Autumn had told both Mother and Grandmother something about the party. "[Autumn]'s told us things that's gone on at her father's house." (Tr. 146)(emphasis added). But Grandmother had just previously stated, "I don't know the environment there is, is that good. I don't know. I can't say its not. I don't know." (Tr. 145) In light of this testimony, where Grandmother disclaimed personal knowledge of the circumstances at Father's house, we fail to see how Grandmother's repetition of what Autumn said  to "us", Grandmother and Mother, could have influenced the trial court. The trial court heard the allegations about what happened when Autumn was with Father during Mother's testimony and during Father's cross examination. We conclude that hearing the allegations from Grandmother too would not have affected the court's decision.

{¶ 13}   The second assignment of error is overruled.

## B. Custody Decision

{¶ 14}   The first assignment of error challenges the trial court's best-interest finding and decision to grant Father temporary custody. Mother contends that this decision was not in Autumn's best interest and is not supported by the evidence.

{¶ 15}   "A court's award of temporary custody must be supported by a preponderance of the evidence. A trial court has substantial discretion in weighing the considerations involved in making the determination regarding a child's best interest, and the court's determination will not be reversed absent an abuse of that discretion. A trial court abuses its discretion when its decision is 'unreasonable, arbitrary or unconscionable.'" *In re S.M.*, 2d Dist. Montgomery No. 24539, 2011-Ohio-6710, ¶ 4, quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 NE 2d 1140 (1983).

{¶ 16}   After Autumn's adjudication, the court was permitted to make an order of disposition committing Autumn to the temporary custody of, among others, a parent or relative. *See* Juv.R. 34(D)(2); R.C. 2151.353(A). A court's dispositional decision must be based on what is in the child's best interest and promotes her welfare. *See In re Lakes*, 149 Ohio App.3d 128, 2002-Ohio-3917, 776 N.E.2d 510, ¶ 63 (2d Dist.). The court's focus must be "on providing for the care, protection, and mental and physical development of the child." *Id.*, citing R.C. 2151.01(A) and (B).

{¶ 17}   The trial court based its best-interest findings on several findings of fact. The court found that Autumn has been on academic probation with the court for the last two years. She was habitually truant during both of those school years, both years missing over 20 days in

the second semester alone. Autumn failed both years and remains a high school freshman. The court also noted that Autumn preferred to live with Grandmother rather than Father. The court found that Father is self employed and that his schedule is flexible, so he can ensure that Autumn gets to school every day. The court noted that Father said he will provide a good home for her and will provide the structure that she lacked in Mother's home. Father also said that he will ensure that she goes to school and that she graduates from high school. The court noted that it is concerned with the lack of time Father has spent with Autumn over the last several years. But the court said that their visits, which started when this case began, have gone well. Lastly, with respect to Mother and Grandmother, the court found that, for all practical purposes, Mother now lives with Grandmother. The court noted that they, hoping to remedy Autumn's school problems, have enrolled her in an online school. Grandmother said that she will be responsible for making sure Autumn completes her assignments. But the court noted that Grandmother said that she will be at work during the day, although she also said she plans to retire. Because of this, the court believed that the schooling task will fall back to Mother. And, said the court, the last two years show that Mother is not the best person to be in charge of Autumn's schooling.

{¶ 18}   Based on these findings, the trial court found that, right now, being with Father is in Autumn's best interest. Father, said the court, stands ready, willing, and able to care for her and to try and improve her academic status. It is not in Autumn's best interest, said the court, to remain with Grandmother. Because Mother essentially lives with Grandmother, said the court, Autumn is in essentially the same environment that caused her to be dependent in the first place, an environment in which Autumn has failed academically.

{¶ 19}   Mother contends that the best-interest findings with respect to Grandmother are

not supported by the evidence. Mother points out that CCDJFS found Grandmother's home a safe and appropriate placement for Autumn and that Grandmother was not involved in the circumstances leading to the dependency adjudication. The environment in Grandmother's home, says Mother, is not the same as in her home. Mother further says that Grandmother did not learn of Autumn's school problems until the end of the last school year. And the GAL testified that there have been no school problems since Autumn was placed with Grandmother. Grandmother testified that Autumn has attended school every day since she came to live there.

{¶ 20}  Mother also contends that the evidence strongly supports finding that it is in Autumn's best interest to live with Grandmother. Mother says that the trial testimony unequivocally shows that Grandmother can meet Autumn's needs and has been meeting them since she was placed there. Mother points out that no home study has been done on Father and that CCDJFS does not know what his living situation is. We note, though, that the GAL visited Father in the home he would live in with Autumn, and the GAL agreed that Father's home is "safe and appropriate and would be appropriate for [Autumn] to live in." (Tr. 27). Mother points out too that CCDJFS and the GAL both recommended that Autumn be placed with Grandmother. They based this recommendation, says Mother, on several things: Grandmother has temporary custody of Autumn's two siblings; Autumn has lived with siblings for an extended period of time and has a strong bond with them; Grandmother has been involved in Autumn's entire life and they have a strong bond; the GAL believes that it is detrimental for Autumn to be removed and placed elsewhere; Autumn does not have a close bond with Father and does not really know him; Father was absent from Autumn's life for most of the preceding 10 years; Father has a history of violence, including assaults, batteries, and bar fights; Father is prejudiced and uses racial slurs;

Father took Autumn to a party involving alcohol and nudity; placement with Father would require Autumn to change school districts; placement with Father would require Autumn to change her primary care physician; placement with Father would require Autumn to change her counselor; and Autumn wants to remain with Grandmother.

{¶ 21} This is a close case. But we determine the decision made by the trial court is not unreasonable, arbitrary or unconscionable. "[D]isputes about the facts, the weight accorded the testimony, and the credibility of witnesses are left to the trial court." *Gartin v. Gartin*, 2d Dist. Clark No. 2011-CA-74, 2012-Ohio-2232, ¶ 7, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997). Also, the order is only a temporary custody order. Facts and circumstances may develop or change. Furthermore, there is a limit on how long such an order may exist before the matter must be revisited. *See* R.C. 2151.353(F); R.C. 2151.415(D)(4). Although we might have decided differently, we cannot say that the trial court abused its discretion.

{¶ 22} The first assignment of error is overruled.

{¶ 23} The trial court's order is affirmed.

. . . . . . . . . . . . .

FAIN, P.J., and DONOVAN, J., concur.

Copies mailed to:

James S. Armstrong
Kevin Talebi
Jacob Jeffries
Hon. Brett A. Gilbert