SPEER et al., Appellants,

v.

OHIO DEPARTMENT OF REHABILITATION & CORRECTION, Appellee.

[Cite as *Speer v. Ohio Dept. of Rehab. & Corr.* (1993), 89 Ohio App.3d 276.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–1565.

Decided Aug. 12, 1993.

Bates & Mong Co., L.P.A., James F. Mong and Anna L. Bates, for appellants.

Lee Fisher, Attorney General, and Sally Ann Walters, Assistant Attorney General, for appellee.

Spater, Gittes, Schulte & Kolman, Kathaleen B. Schulte and Frederick M. Gittes, urging reversal for amici curiae, National Organization for Women et al.

KERNS, Judge.

The plaintiffs, Rand and Theresa K. Speer, filed an amended complaint against the defendant, the Ohio Department of Rehabilitation and Correction ("ODRC"), alleging libel and slander, defamation of character, and invasion of privacy. The cause came on for trial in the Ohio Court of Claims on June 8, 1992, and, on

October 7, 1992, the trial court rendered a decision in favor of ODRC after finding that the Speers had failed to present sufficient evidence to establish any libel, slander, or defamation of character, and had failed to prove any invasion of privacy by a preponderance of the evidence.

According to the evidence, Theresa Speer began working at the Madison Correction Institution ("MCI") in London, Ohio in July 1988. She worked the second shift from August 28, 1988 through July 2, 1989, during most of which time her shift captain was Leroy Payton. Subsequently, Payton was promoted to administrative captain which position involved conducting investigations for the chief of security at the prison.

In September 1988, Theresa Speer approached Payton and told him that she was given a warning by another employee that there were rumors floating around that she was involved with two inmates and that she should be careful in her association with inmates. Payton indicated that he had not heard such rumors, but that he had heard from line supervisors that inmates were observed engaging in lengthy conversations with her. Thereafter, Payton received various reports, including reports from other female correction officers, that Speer was being "too friendly" with the inmates.

As more specific references to particular conduct of Theresa Speer continued to be reported, Payton launched a formal investigation into her activities. The surveillance and investigation of Speer took a number of turns until February 12, 1989, when Payton positioned himself in the ceiling of a staff restroom for over seven hours for the purpose of spying on her. The restroom was maintained for both male and female staff members, and Payton heard several people come and go, including Theresa Speer, during his lengthy period of surveillance from the crawl space.

At the time of this phase of the investigation of Speer, there were no guidelines or any written policy governing the surveillance of employees, but the warden at MCI testified that he was unaware of any other investigation which included spying on employees in the bathroom.

In this appeal, the Speers have set forth three assignments of error, the first of which has been stated as follows:

"The court below erred in finding that the plaintiff/appellant failed to present sufficient evidence to establish libel, slander and defamation of character."

With respect to this alleged error, it is well to remember that in a trial to the court without a jury, a motion for judgment at the conclusion of the plaintiff's case is one for dismissal under Civ.R. 41(B)(2) and not a motion for a directed verdict under Civ.R. 50. *Bank One, Dayton, N.A. v. Doughman* (1988), 59 Ohio App.3d 60, 62–63, 571 N.E.2d 442, 444. A dismissal of plaintiff's case under

Civ.R. 41(B)(2) allows the trial court to weigh the evidence, resolve any conflicts, and render judgment for the defendant. See *Janell, Inc. v. Woods* (1980), 70 Ohio App.2d 216, 217, 24 O.O.3d 266, 435 N.E.2d 1138, 1139; *Altimari v. Campbell* (1978), 56 Ohio App.2d 253, 255–256, 10 O.O.3d 268, 270, 382 N.E.2d 1187, 1190. See, also, *Levine v. Beckman* (1988), 48 Ohio App.3d 24, 27, 548 N.E.2d 267, 270.

■ Here, the plaintiffs were required to prove that defamatory matter was published or spoken of them (R.C. 2739.01). In such context, defamation has been defined as a false representation, either written or spoken, which injures a person's reputation. See *Dale v. Ohio Civ. Serv. Emp. Assn.* (1991), 57 Ohio St.3d 112, 567 N.E.2d 253. Moreover, the plaintiffs had the burden of proving that such statements were made with malice. See *Evely v. Carlon Co.* (1983), 4 Ohio St.3d 163, 4 OBR 404, 447 N.E.2d 1290; *Stearns v. Ohio Savings Assn.* (1984), 15 Ohio App.3d 18, 15 OBR 39, 472 N.E.2d 372.

■ In the present case, the record is voluminous and the evidence is somewhat unwieldy, but our search has failed to disclose anything of substance to support the claims of the appellants that they were unnecessarily defamed by the appellee's employees. In fact, a carelessly misplaced incident report and an uncomplimentary newspaper article, both of which were provided by the appellants themselves, probably turned out to be the most damaging to their reputations.

As in most cases, the evidence upon critical issues was conflicting to some extent, but it is fundamental that the opinion of a reviewing court has no force against conflicting evidence and inferences. Moreover, this court is required to give way to the trial court upon the issue of credibility. In other words, the state of the evidence upon the allegations of libel, slander, and defamation of character is such as to preclude any interference from this court, and, accordingly, the first assignment of error is overruled.

■ The second assignment of error has been submitted as follows:

"The court below erred in equating the term 'search' as it is used in the ODRC employee consent-to-search form to the term 'surveillance.'"

This alleged error is directed to a consent form, which was signed by Theresa Speer at the time of her employment on July 5, 1988 and which provides specifically as follows:

"The undersigned employee hereby consents to be searched at any time or any place while on the property of any institution of the Ohio Department of Rehabilitation and Correction. Such search may be conducted whenever the need for institution security may require it, and shall not be limited to search for

cause, but may include random search. The undersigned further acknowledges that refusal to submit to search at any time shall constitute an act of insubordination, which may result in appropriate disciplinary action."

In commenting upon the claimed invasion of privacy, the trial court alluded to the executed consent form as follows:

" * * * This consent to search document certainly indicates that an employee of defendant has consented, as a condition of employment, to be searched or observed at any time that employee is on the property of the institution."

With reference to the consent form, the expanded interpretation of the trial court obviously embraces conduct which was not within the contemplation of any of the parties to this action when the form was signed on July 5, 1988. In fact, the consent form, by its own terms, has little or no relevancy to either the surveillance from the bathroom ceiling or the claimed invasion of privacy. Moreover, a search envisioned by the plain words of the form must be one to which an employee can refuse to submit at the risk of disciplinary action, but unless an employee is aware of a search, she cannot refuse to submit to it. Therefore, the reliance of the trial court upon the signed consent to search constituted error.

The third assignment of error has been presented by the appellants as follows:

"The court below erred in finding that the invasion of privacy complained of herein is immune from suit for reasons that the ODRC was simply making policy decisions with regard to the activities and administration of the department."

This assigned error is apparently responsive to the following observation of the trial court:

" * * * In the case of this defendant, security and the proper and efficient operation of the institution are of top priority. When those who are employed by the institution become involved in activities that are not authorized, the general security of the entire institution may be in jeopardy.

"While this judge may or may not personally condone some types of surveillance tactics, this court will not intervene in a basic policy decision that relates to the activities and administration of a state department. * * *"

In support of this explanation, the court relied upon the case of *Reynolds v. State* (1984), 14 Ohio St.3d 68, 14 OBR 506, 471 N.E.2d 776, but unlike the facts of the *Reynolds* case, the defendant's conduct in this case was not traceable to any policy-making decision. On the contrary, the investigator, Payton, specifically testified that there was no formal policy regarding investigations of alleged misconduct. Furthermore, the reliance of the trial court upon "basic policy"

cannot be reconciled with evidence which reveals that Payton was reprimanded by his supervisors for pursuing the surveillance tactics employed in this particular case.

As noted by the trial court, the proper and efficient operation of the institution was of top priority and, unquestionably, reasonable surveillance of employees in an institutional setting is an acceptable investigative tool, but we have been unable to find any evidence that the appellee's admitted conduct in the bathroom was defensible as a policy matter. Hence, the finding of the trial court that the surveillance of Theresa Speer from the restroom ceiling was pursuant to the exercise of basic policy is against the manifest weight of the evidence.

■ In their brief, the appellants also claim that the appellee invaded their privacy by obtaining the toll and billing records for their telephone number, but this court has not been specifically directed to the evidence in the transcript upon which the appellants rely, as required by App.R. 16(D), and this court has been unable to find sufficient evidence to support the claim. In fact, the Speers admit that such records did not identify the caller or the recipient of the calls, but only indicated whether calls were made and the length of each call. Hence, we cannot say that the trial court's disregard of the appellants' argument about the subpoenaed telephone records constituted error.

In these proceedings, the appellants also have been favored with an *amici curiae* brief which challenges the authority of a public employer to surreptitiously surveil its employees for a period of seven hours from the ceiling of a private bathroom maintained for the use of both male and female employees.

The *amici curiae* brief, which reflects the views of a number of organizations, relates solely to the claim of invasion of privacy which arose from the restroom surveillance of Speer on February 12, 1989. These organizations have set forth three assignments of error as follows:

"I. The court below erred in holding that the surreptitious surveillance of plaintiff in the employee bathroom by defendant's supervisory employee was a search consented to by plaintiff.

"II. The lower court erred in holding that the action of surveilling plaintiff in a private bathroom was pursuant to a broad policy [of] decisionmaking and provided immunity to the defendant from suit for the injuries caused to plaintiff.

"III. The lower court erred in holding that under a constitutional analysis, not required in this tort action, the intrusion into plaintiff's privacy was reasonable."

The third assignment of error is dependent, in one way or another, upon the validity of the first and second assignments of error, and, as heretofore indicated herein, the finding that Speer consented to the surveillance on February 12, 1989

and the finding that such surveillance was pursuant to basic policy are against the weight of the evidence.

Accordingly, appellants' first assignment of error is overruled, but the second and third assignments of error are sustained. The judgment of the Court of Claims is reversed and the cause is remanded to the trial court for further proceedings according to law.

*Judgment reversed*
*and cause remanded.*

WHITESIDE and TYACK, JJ., concur.

JOSEPH D. KERNS, J., retired, of the Second Appellate District, sitting by assignment.